STATE of Missouri,
Plaintiff-Respondent,

v.

Johnnie Haze WILLIAMS,
Defendant-Appellant.

No. 49400.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 7, 1986.

562

Mary A. Dockery, Asst. Public Defender, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SATZ, Judge.

A jury convicted defendant, Johnnie Williams, of burglary, first degree, § 569.160, RSMo 1978, two counts of stealing without consent, § 570.030, RSMo Supp.1984, (stealing from a person and stealing a motor vehicle), and leaving the scene of an accident, § 577.060 RSMo Supp.1984. The trial court sentenced defendant, as a persistent offender, to fifty years imprisonment. Defendant appeals. We affirm.

At about noon on April 3, 1984, defendant entered the home of Nancy and Hyman Shukar and confronted Nancy Shukar in the kitchen. Defendant demanded Mrs. Shukar's purse, and she complied. At that moment, Hyman Shukar attempted to attack defendant with a chair, but defendant managed to shove Hyman against the refrigerator and onto the floor. Defendant then leaned over Hyman and demanded

money. Hyman attempted to give the defendant credit cards, but the defendant refused them. Defendant took five dollars in cash instead.

Defendant then drove off in the Shukars' car. The Shukars telephoned the police and described the stolen car. A police officer arrived at the Shukar home approximately ten to twenty minutes after defendant left. The Shukars gave the officer a general description of defendant.

Another police officer, Shelton, heard a police broadcast describing the stolen car and its driver. Shelton then saw a car matching the description he just heard and gave chase. He temporarily lost the car, then saw it again going eastbound on another street, Olive Street Road. Shelton again chased the car until it went up a one way street, hitting another police car. He once more lost sight of the car as it sped away from the accident. Shelton then heard a police broadcast about an accident involving the Shukar car on Bartmer Road. He went to that accident location, found defendant running among the houses and arrested him.

Two firemen, Michael Toomey and Harvey Guittar, confirmed Shelton's testimony. While Shelton's chase was taking place, Toomey and Guittar heard a police broadcast describing the Shukar vehicle and its driver. They then noticed the car identified on the broadcast turn from Midland Ave. on to Olive Street and come into the lane next to them. The car was then slightly behind and to the right of Toomey and Guittar. It paced their car for about ten seconds. The firemen took note of the driver's appearance. The car then accelerated beyond the firemen and made a left turn, with a police car following it.

Witness Madeline Merritt also confirmed Officer Shelton's testimony. Merritt lived near the Bartmer accident location. Apparently, after that accident had occurred, Merritt saw a man run into her neighbor's front yard carrying a purse and attache case. Merritt then observed the man running back into her neighbor's yard without the purse. Later she found the purse and turned it over to the police.

Other police officers escorted the Shukars, the firemen and Madeline Merritt to the place of arrest. The defendant was between two uniformed police officers, handcuffed and standing by Nancy Shukar's purse. Upon arrival at the scene of arrest, the Shukars immediately told the police the defendant was their assailant. Guittar and Toomey also identified defendant immediately. The police made no overt suggestions to either the Shukars or the firemen concerning the identity of the defendant.

Prior to trial, defendant filed a motion to suppress the testimony of the identification witnesses, both their in-court and out-of-court identifications. After a hearing, the trial court denied defendant's motion. At trial, the Shukars and the firemen described their out-of-court identifications of defendant, and each made an in-court identification of him.

On appeal, defendant complains about the testimony describing the out-of-court identifications. Defendant contends this testimony was tainted by an impermissibly suggestive confrontation between the witnesses and defendant. We disagree.

Some have contended that case law has established two different due process tests for determining the admissibility of identification testimony—one test for out-of-court identifications and another test for in-court identifications. *See Manson v. Brathwaite*, 432 U.S. 98, 122, 97 S.Ct. 2243, 2257, 53 L.Ed.2d 140, 159 (1977), (Marshall, J., dissenting); and *see State v. Carter*, 572 S.W.2d 430, 437–440 (Mo.App.1978) (Donnelly, J., dissenting). This contention has been answered and laid to rest. We use the same, interchangeable test for determining the admissibility of out-of-court and in-court identification testimony. *Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253; *State v. Carter*, 572 S.W.2d at 435–436; *e.g., State v. Green*, 635 S.W.2d 42, 44 (Mo.App.1982).

The Manson test is straightforward. "Reliability, not suggestiveness, is the linchpin in determining the admissibility of identification testimony", and "reliability is to be assessed under the totality of circumstances" *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). "Factors to be considered include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson v. Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253; *State v. Carter,* 572 S.W.2d at 435.[1]

Thus, after *Manson,* the crucial test is two pronged: (1) was the pretrial identification procedure suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification made by the witnesses. *E.g., State v. Higgins,* 592 S.W.2d 151, 159 (Mo. banc 1979). Although *Manson* lists the factors to be considered in evaluating the reliability of an identification, it provides no criteria for determining the degree of suggestion present in a particular identification process, and Missouri case law has not yet filled this gap. This lack of criteria presents no problem here, for, under any reasonable criteria, the pretrial confrontation in this case was not unduly suggestive.

The Shukars and the firemen arrived at the show-up within one hour of their initial confrontations with defendant. All of these witnesses said the police did not make any overt suggestions concerning defendant's identity. Arguably, any one-on-one confrontation may suggest to the witness that the police believe the subject to be the perpetrator. We, in Missouri, however, routinely hold such show-ups are not unduly suggestive, even when the subject is in handcuffs, *see, e.g., State v. Dodson,* 491 S.W.2d 334, 338 (Mo. banc 1973), and particularly when the police make no overt remarks concerning the subject's identity. *E.g., State v. Ralls,* 583 S.W.2d 289, 291 (Mo.App.1979).

Even assuming the show-up was unduly suggestive, however, we would still find the pretrial identification reliable and, thus, admissible under the *Manson* test. First, the Shukars and the firemen had ample opportunity to view defendant. The Shukars observed defendant in their well-lit kitchen. Nancy Shukar saw defendant enter her house and head toward her. Defendant stood in front of Nancy for three to five minutes. He also leaned over Hyman when Hyman was on the floor. Thus, both Shukars had good opportunities to view defendant because of good lighting conditions and close contact between the parties for a relatively long time. *See State v. Young,* 534 S.W.2d 585, 589 (Mo. App.1976). Moreover, while Hyman was walking his dog some two hours before the crime, he saw defendant walking in the neighborhood. This previous encounter increases the reliability of Hyman's identification. *See State v. Collins,* 567 S.W.2d 144, 146 (Mo.App.1978).

---

1. Both prior to and after *Manson* and *Carter,* our courts have used a three part test for reliability which parallels but is stated differently than the *Manson* test. To determine reliability under this test, the court determines whether there is: (1) a source of identification independent of the suggestive procedures, (2) the absence of suggestive procedures, and (3) a positive in-court identification. If parts (1) and (3) are met, part (2) becomes irrelevant to the determination of reliability. *See, e.g., State v. Hurst,* 612 S.W.2d 846, 851 (Mo.App.1981); *State v. Dickerson,* 568 S.W.2d 559, 561 (Mo.

App.1978); *State v. Holland,* 534 S.W.2d 590, 592 (Mo.App.1976). This test is said to be similar in scope and purpose to the United States Supreme Court test. *E.g., State v. Dickerson, supra,* 568 S.W.2d at 561.

No reasons are given by our courts for choosing one test rather than the other. Thus, no prediction can be made which test will be used. Moreover, no distinction is usually made between state and federal constitutional guarantees and precedents for each are routinely blended. *See, e.g., State v. Gullett,* 633 S.W.2d 454, 455–56 (Mo.App.1982).

The firemen also had an opportunity to view defendant. Toomey, sitting in the right rear seat of the firemen's car, saw defendant for ten seconds. Guittar, sitting in the front passenger seat, observed defendant from three to five seconds.

Second, each one of the witnesses was highly attentive. Nancy Shukar carefully watched defendant open the front door and approach her. Hyman Shukar's attention was fixed on defendant when defendant pushed him to the floor and leaned over him. Although the Shukars were upset from their ordeal, there is no evidence they were shaken beyond the capacity to remember defendant. *See State v. Johnson*, 628 S.W.2d 904, 909 (Mo.App.1982); *State v. Bivens*, 558 S.W.2d 296 (Mo.App.1977). The firemen would and did concentrate on the defendant, because he was driving a car matching the police description.

Third, the Shukars gave the police a description of defendant when the police arrived at the Shukar home. The description was accurate except for Hyman's description of defendant's hat. This discrepancy is minimal and is simply something for the jury to weigh. *State v. Higgins*, 592 S.W.2d at 160.

Fourth, the Shukars and the firemen were certain in their identification of defendant at the time of the show-up. Each witness identified defendant almost immediately. The immediacy of these identifications enhances their reliability. *See State v. Ford*, 677 S.W.2d 352, 355 (Mo.App. 1984).

Fifth, the time between the initial contacts between the witnesses and defendant and the subsequent show-up was relatively short. The time from the Shukars' encounter with defendant and the show-up was about one hour, according to Hyman, and about twenty minutes, according to Nancy. The firemen were at the show-up less than fifteen minutes after they saw defendant driving on Olive Street Road. It is doubtful any of these witnesses would forget the defendant in less than an hour. *See State v. Dixon*, 627 S.W.2d 77, 79 (Mo.App.1981).

Finally, only the most grossly suggestive pretrial identification procedure would materially lessen the reliability of the identifications made here. *See, State v. Higgins*, 592 S.W.2d at 160 [2]. Certainly, that type of procedure did not occur, and, thus, the foregoing analysis eliminates any real or imagined doubt about the reliability of identifications in question.

Defendant next claims surprise. He contends the state called Madeline Merritt as an identification witness at trial but did not produce her at the hearing on defendant's pretrial motion to suppress identification testimony. Defendant's contention is misdirected and, thus, misses the mark.

For our purposes here, we will assume the state carries the risk of nonpersuasion and the burden of going forward with the evidence in a defendant's motion to suppress identification testimony similar to the state's burden in a defendant's motion to suppress illegally seized evidence, § 542.-296 RSMo.1978, *see State v. Epperson*, 571 S.W.2d 260, 263 (Mo. banc 1978) *cert. denied* 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274, (1979); *State v. Baker*, 632 S.W.2d 52, 53 (Mo.App.1982), and in a defendant's motion to suppress statements, *State v. Hughes*, 596 S.W.2d 723, 726 (Mo. banc 1980); *State v. Olds*, 569 S.W.2d 745, 751 (Mo. banc 1978). This burden, as assumed, may require the state, in a motion to suppress identification testimony, to produce all identification witnesses the state intends to use at trial. Apparently, the state did produce the Shukars and the firemen at the pretrial hearing on defendant's motion to suppress identification testimony. Merritt did not appear. Merritt's failure to appear, however, is understandable, for,

---

**2.** What identification procedure would be egregious enough to destroy the "linchpin" of reliability is obviously a case by case determination. In *State v. Dickerson*, 568 S.W.2d 559 (Mo.1978), one hour after his car was forcibly taken, the victim was asked to identify the defendant after being told the defendant was found in the victim's car and after seeing the defendant alone handcuffed just outside his jail cell. This Court held the show-up was not "unnecessarily suggestive", and, if it were, the reliability factors removed any taint.

contrary to defendant's contention, Merritt was not called at trial as an identification witness.

From the record, it is clear Merritt was called at trial by the state not to identify defendant but simply to describe the man she saw running near her house. Merritt was thoroughly examined—direct examination, cross-examination, redirect examination, recross examination, further redirect examination and further recross examination. Merritt did indirectly refer to her presence at the show-up in her further redirect examination, but it was not until defense counsel's subsequent and third opportunity to cross-examine Merritt that she made the specific identification defendant complains about. On further recross examination, defense counsel asked Merritt whether she had seen defendant in a police show-up, and she responded:

> "The police officer asked me, 'is that that man that was running through your yard?' I stepped behind the tree and looked and I said, 'Yes, that's him.'"

■ Although the testimony itself may be construed as identification testimony, it obviously was not elicited by the state, but, rather, was invited by defense counsel. Quite simply, the answer to defendant's complaint is the state did not call Merritt as an identification witness.[3]

■ Moreover, if Merritt's identification was erroneously admitted, the error is harmless when considered in light of the overwhelming identification testimony of the other four witnesses—the two Shukars and the two firemen. Defendant is guaranteed a fair trial, not a perfect one. *Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1978); *State v. Keeble*, 427 S.W.2d 404, 408 (Mo. 1968).

Judgment affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.

---

**3.** Neither party made the state's list of endorsed witnesses part of the record on appeal. We reviewed the list, however, and found Merritt was endorsed as a witness for trial. Thus,

---

through appropriate discovery, defendant could have determined just what Merritt knew about defendant and the incident in question.