**STATE of Missouri, Respondent,**

v.

**Stanley G. BODY, Jr., Appellant.**

**No. ED 96407.**

Missouri Court of Appeals,
Eastern District,
Division Four.

April 17, 2012.

---

Andrew E. Zleit, Assistant Public Defender, Office of the Missouri Public Defender, St. Louis, MO, for Appellant.

Chris Koster, Attorney General, Robert J. Bartholomew, Assistant Attorney General, Jefferson City, MO, for Respondent.

KURT S. ODENWALD, Chief Judge.

### Introduction

Stanley Body (Body) appeals from the trial court's judgment after a jury trial convicting him of first degree robbery and armed criminal action. The State presented evidence that the victim of the crime, Raymond Burrows (Burrows), identified Body in both photo and physical lineups as the individual who robbed him. On appeal, Body argues that the trial court erred in allowing the identification testimony because the police procedures used during the photo and physical lineups impermissibly suggested to Burrows that Body was his assailant. Body also argues that the trial court erred in admitting the same testimony because Burrows only saw his assailant for a limited time, and in poor light, and therefore the identification testi-mony was unreliable, and more prejudicial than probative. Under plain error review, we find no manifest injustice or a miscarriage of justice occurred from the admission of the identification evidence because Body failed to demonstrate that the police procedures were impermissibly suggestive, or that the evidence was more prejudicial than probative. Accordingly, we affirm the trial court's judgment.

### Factual and Procedural History

Body does not contest the sufficiency of the evidence. Therefore, the evidence viewed in the light most favorable to the trial court's judgment is as follows. On March 17, 2010, Burrows was standing on the landing outside his home when an individual approached him from behind and demanded that Burrows give the assailant his car keys. Burrows saw the face of the assailant. The assailant took Burrows's keys and stole his truck. Burrows promptly notified the police of the robbery and vehicle theft.

Four days later, Detective Steven Ortbals (Det. Ortbals) observed three individuals, one of whom was Body, traveling in Burrows's stolen truck. Det. Ortbals stopped the vehicle, and placed all three individuals under arrest. Det. Ortbals notified Burrows that his truck had been recovered, and requested that Burrows examine a photo lineup. Det. Ortbals created a photo lineup which included all three suspects, including Body, using a database that matched the suspects' facial features with those of other individuals and created an array of similar looking individuals. Det. Ortbals showed Burrows the photo lineup and asked whether any of the individuals in the photos looked familiar. Burrows immediately identified Body as the individual who robbed him, and testified at trial that he was "very clear" about his identification. The next day, Burrows also

identified Body in a physical lineup of individuals with similar physical characteristics. Burrows testified at trial that his identification was "very clear" and he was "100%" certain that Body was the individual who robbed him.

The State charged Body with first degree robbery and armed criminal action. At trial, the State introduced as evidence the photo lineup in which Burrows identified Body as the individual who had robbed him, and testimony regarding the identification. The State also produced evidence and testimony of Burrows's identification of Body during the physical line up. A jury convicted Burrows of both counts. This appeal follows.

### Point on Appeal

In his sole point on appeal, Body argues that the trial court erred in admitting evidence of Burrows's identification of Body as the individual who robbed him. Specifically, Body asserts that the trial court erred in admitting both the evidence of Burrows's photo and physical identifications of Body, and testimony related to the identifications. Body contends that the admission of such identification evidence was plain error because Burrows's identification was the product of impermissibly suggestive police procedures, unreliable, and should have been excluded under the due process clause. Body also argues that the trial court plainly erred when it admitted the identification evidence because the evidence was more prejudicial than probative.

### Standard of Review

 Body concedes that he did not preserve this alleged error for our review. Therefore, we review only for plain error under Rule 30.20,[1] and we will affirm un-

less we find that the trial court committed an error which caused manifest injustice or a miscarriage of justice. Rule 30.20. Under plain error review, the movant must demonstrate that the trial court committed an error which is "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage or justice." *State v. Roper*, 136 S.W.3d 891, 900 (Mo.App. W.D.2004). If the movant has carried the burden of producing an error that facially produced manifest injustice or a miscarriage of justice, we will consider whether the claimed error did in fact cause manifest injustice or a miscarriage of justice. *State v. Baumruk*, 280 S.W.3d 600, 607–08 (Mo. banc 2009).

### Discussion

**I. The trial court's admission of the identification evidence was not plainly an error in violation of due process.**

This case concerns the admissibility of eyewitness identification evidence. In recent years, eyewitness testimony has been the subject of attack on grounds that it is inherently unreliable, but simultaneously of such persuasive value that it cannot be discounted using the ordinary tools of cross-examination and impeachment. *Perry v. New Hampshire*, —— U.S. ——, 132 S.Ct. 716, 730–31, 181 L.Ed.2d 694 (2012) (Sotomayor, J., dissenting). Numerous studies have called into question the reliability of eyewitness testimony. *See, e.g.*, Deffenbacher et al., *Forgetting the Once-Seen Face*, 14 J. Experimental Psychol. Appl. 139, 147–148 (2008) (eyewitness identification becomes increasingly more unreliable as time increases between witness's initial perception and subsequent identification); Morgan et al., *Accuracy of Eyewitness Memory for Persons Encountered*

---

**1.** All rule references are to Mo. R.Crim. P.2010 unless otherwise indicated.

*During Exposure to Highly Intense Stress,* 27 Int'l J.L. & Psychiatry 265, 274 (2004) (eyewitness identification is adversely affected by presence of a stressful environment during witness's perception); Memon et al., *Exposure Duration: Effects on Eyewitness Accuracy and Confidence,* 94 Brit. J. Psychol. 339, 348 (2003) (length of time of perception affects reliability of eyewitness identification). Nor have courts ignored the potential for eyewitness testimony to be unreliable. *See, e.g., U.S. v. Wade,* 388 U.S. 218, 228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) ("The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification."); *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (likelihood of eyewitness misidentification obtained through suggestive procedures must be determined by examining opportunity of witness to perceive events, witness's degree of attention, accuracy of witness's prior description, level of witness certainty, length of time between perception and identification).

Defendants have four avenues to attack the inherent deficiencies of eyewitness testimony. First, defendants may challenge the credibility and unreliability of a witness's identification through rigorous cross-examination. *Perry,* 132 S.Ct. at 721. Second, in Missouri, although defendants are not entitled to offer expert testimony as to the general unreliability of expert testimony, the admission of such testimony lies within the sound discretion of the trial court. *State v. Allen,* 274 S.W.3d 514, 526–27 (Mo.App. W.D.2008); *see also State v. Lawhorn,* 762 S.W.2d 820, 823 (Mo. banc 1988) (trial court did not abuse its discretion in prohibiting expert

testimony as to general unreliability of eyewitness identification).[2] Third, the due process clause limits the admissibility of eyewitness identification caused by impermissible police suggestiveness, and which is also unreliable. *Middleton,* 995 S.W.2d at 453. Finally, eyewitness testimony, as is the case with any evidence, may be excluded when it is deemed to be more prejudicial than probative. *Perry,* 132 S.Ct. at 729. Here, Body challenges the admission of the identification evidence presented in this case on the grounds that it violated due process, and was more prejudicial than probative.

A. *To challenge the admissibility of identification evidence under the due process clause, the defendant must establish suggestiveness of police procedure before we may reach the issue of the reliability of the identification.*

 "Identification testimony is admissible unless the pretrial identification procedure was unnecessarily suggestive *and* the suggestive procedure made the identification unreliable." *Middleton,* 995 S.W.2d at 453 (emphasis in original). We will not examine whether the identification was sufficiently reliable unless the defendant has first borne the burden of demonstrating that the police procedures were impermissibly suggestive. *State v. Floyd,* 347 S.W.3d 115, 125 (Mo.App. E.D.2011). Police procedure is unduly suggestive if the witness's identification of the defendant results from the procedure or actions of the police, rather than from the witness's recollections of his or her firsthand observations. *Id.* Identification evidence should not be excluded as unduly suggestive unless the procedure was so suggestive that it gave rise to a "very substantial likelihood of irreparable misidentification."

---

**2.** Missouri courts have also recognized that such testimony may be excluded on grounds that jurors may use their own experience to

reach a judgment about the credibility of a witness's identification. *Lawhorn,* 762 S.W.2d at 823.

*Id.* (internal quotations and citation omitted).

The law in Missouri ·is well settled that eyewitness identification evidence will not be excluded on grounds of unreliability unless the unreliability was created by impermissibly suggestive police procedures. *Middleton,* ·995 S.W.2d at 453. The presence of suggestive police action has always been prerequisite to an inquiry into the potential unreliability of eyewitness identification. *Id.* Body argues for a substantive change in the law governing the admission of eyewitness identification testimony. Body contends that due process requires that the factors of suggestiveness and reliability be balanced against one another; not treated as separate elements, each of which must be met in order to trigger exclusion of the identification testimony. Specifically, Body argues that "[w]here there is a high showing of the unreliability of an identification, there should be a corresponding lowering of the suggestiveness hurdle."

The Supreme Court recently rejected a similar argument in *Perry v. New Hampshire,* and held that reliability cannot be examined unless and until the defendant has first shown that police employed suggestive identification procedures. —— U.S. ——, 132 S.Ct. 716, 721, 181 L.Ed.2d 694 (2012). In that case, an eyewitness at the scene of a crime reported to police that she had observed a tall African–American man attempting to break into nearby vehicles. *Id.* at 721. When an officer asked the witness if she could give a more specific description of the suspect, the witness pointed at Perry, who was standing nearby and identified him as the individual she saw. *Id.* at 722. Perry was the only African–American male at the scene, and the witness was later unable to identify Perry in a photo lineup. *Id.* On appeal, Perry argued that the trial court erred in

denying his motion to suppress the identification on grounds that Perry failed to demonstrate police suggestiveness. *Id.* Perry argued that due process did not require an initial showing of police suggestiveness. *Id.* Rather, Perry contended, suggestive circumstances alone were sufficient to trigger judicial review of the reliability of the witness's identification. *Id.* at 722–23.

The Court rejected Perry's argument, holding that due process did not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the opponent of the evidence failed to demonstrate that the identification was the product of a suggestive environment created by police. *Id.* at 730. The Court explained that, absent suggestiveness, due process provides protection to defendants against unreliable eyewitness testimony through "the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id.* at 721. Due process "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Id.* at 723.

The Court's ruling in *Perry* controls in this case. Body makes an analogous argument that the due process clause can trigger the exclusion of·identification evidence in the absence of police suggestiveness when the circumstances of the identification suggest a high likelihood of unreliability. However, *Perry* makes clear that the defendant must first carry the burden of demonstrating the presence of impermissibly suggestive police identification proce-

dures before the reliability of an eyewitness identification may be considered. Accordingly, we reject Body's claim that we may review the reliability of eyewitness identification absent a showing of suggestive police procedures during identification, or that the two factors may be balanced against one another.

B. *The witness identification was not caused by suggestive police procedures.*

Because Body must first satisfy us of the presence of suggestive police procedures, we turn to that question before we consider the reliability of the identification evidence.

■ Body alleges that the police procedures were impermissibly suggestive because, prior to the photo lineup, police officers informed Burrows that they had recovered his truck, and told Burrows that he might be asked to attempt to identify the persons driving the truck. Body also highlights the fact that he was the only person in both the photo and physical lineups. Body concedes that "the suggestiveness in this case may have been subtle and not major, or particularly distinct ...."

After reviewing the record, we find no evidence that the identification procedures used by the police were unnecessarily suggestive. Det. Ortbals compiled the photo lineup using a database that selected individuals with facial features similar to Body. Det. Ortbals told Burrows at the photo lineup that "I'm not saying that any of the people that were caught in your truck are in the photos and I'm not saying that they're not in the photos. But I want to see if, you know, if you can identify the person that pointed the gun at you and took your truck." Burrows immediately identified Body in the photo lineup as the individual who robbed him. At trial, Burrows testified that he was able to identify Body in the photo lineup because "[w]hen someone points a gun at you, I don't know

what happens, but there was a very clear impression that was left in my mind as to who did it."

Given the certainty with which Burrows identified Body, the neutrality of Det. Ortbals's statements to Burrows with respect to the individuals depicted in the photo lineup, and the similarity of the individuals shown in the photo array, we do not find that Burrows's identification of Body in the photo lineup was the product of improper police procedures such that the trial court's admission of the evidence constituted facial plain error.

■ Similarly, the physical lineup was created using individuals who shared physical similarities with Body, including height and weight. Immediately prior to the physical lineup, Det. Ortbals simply asked Burrows to "[s]ee if you recognized anybody." At trial, when asked how he recognized Body during the physical lineup, Burrows testified that Body "made a very distinct impression when he was—I don't know how else to describe it. It was very clear that that was the person who robbed me." Given the neutrality of the creation and presentation of the physical lineup by Det. Ortbals, and the certainty with which Burrows identified Body, we do not find that the record contains evidence that impermissibly suggestive police procedures resulted in Burrows's identification of Body during the physical lineup such that the admission of that evidence constituted facial plain error. We also note that an initial photo identification, followed by a physical identification, is not impermissibly suggestive merely because the defendant is the only individual who appears in both lineups. *See State v. Chambers,* 234 S.W.3d 501, 514 (Mo.App. E.D.2007), *citing State v. Trimble,* 654 S.W.2d 245 (Mo.App. S.D.1983).

## II. Body has not demonstrated that the admission of the identification evidence was more prejudicial than probative.

Body next argues that the trial court erred in admitting the identification evidence because Burrows identification was unreliable, and that as a result, the identification evidence was more prejudicial than probative. Body contends that Burrows only saw his assailant for a short period of time, and in poor lighting, and therefore his subsequent identification is so highly unreliable that the prejudicial value of the evidence outweighs its probative value.

 We will not consider alleged unreliability of identification evidence as grounds for properly excluding that evidence under the due process clause unless the movant has first demonstrated that the police procedures used during the initial identification were impermissibly suggestive. *Floyd*, 347 S.W.3d at 125. However, even when due process is not implicated, witness identification may still be excluded if it is more prejudicial than probative under state and federal rules of evidence. *Perry*, 132 S.Ct. at 729. In Missouri, admissibility of evidence is a two-step analysis. First the proponent of the evidence must establish that the evidence tends to make the existence of a material fact more or less probable. *State v. Anderson*, 76 S.W.3d 275, 276 (Mo. banc 2002). Second, even logically relevant evidence may be excluded where the probative value of the evidence is outweighed by the costs of unfair prejudice, confusion of the issues, misleading the jury, undue waste of time, or cumulativeness. *Id.*

 After carefully reviewing the entire record, we do not find that the trial court committed facial plain error in not excluding the identification testimony on grounds that it was more prejudicial than probative. The probative value of the identification was significant. This case involved a face-to-face armed robbery. Burrows's ability to perceive, recall, and identify the person who robbed him is highly probative of whether Body was the person who committed that crime. The probative value of the identification was increased by the fact that Burrows was subjectively convinced that he correctly identified Body, saying he was "very clear" and "100%" certain that Body was his assailant. *See Neil*, 409 U.S. at 199, 93 S.Ct. 375.

Although the probative value of the identification was high, the evidence may still be excluded if the probative value is outweighed by the prejudicial effect of the evidence. *Id.* However, Body fails to articulate how the identification evidence was unfairly prejudicial. The record does not contain evidence that Burrows was objectively incapable of perceiving his assailant, such as might render the evidence minimally probative and highly prejudicial. The record indicates that Burrows was in close proximity to his assailant, saw the face of his assailant, and that the area was sufficiently well lit. On these facts, we do not find, and Body has failed to explain how the identification evidence was unfairly prejudicial, confused the issues, misled the jury, unduly wasted time, or was cumulative such that the admission of the evidence created manifest injustice, or a miscarriage of justice.

Due process prevents an examination of the reliability of identification evidence unless the defendant has established impermissible police suggestiveness. Absent a showing of police suggestiveness, or that identification evidence is more prejudicial than probative, questions as to the reliability of the evidence or the witness go to the weight of the evidence, not admissibility. *Perry*, 132 S.Ct. at 729; *see Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc

2010). Because Body failed to establish impermissibly suggestive police procedures, or that the probative value of the identification evidence was outweighed by the prejudicial effect, the reliability of Burrows's identification was a credibility issue for the jury. Body was free to argue to the jury that the eye witness identification was unreliable, and the jury was free to believe or disbelieve the evidence. The verdict indicates that the jury was persuaded by the State's identification evidence. Point denied.

### Conclusion

Because the trial court committed no facial plain error when it allowed the admission of the identification evidence, we affirm the trial court's judgment.

PATRICIA L. COHEN, and ROBERT M. CLAYTON III, JJ., Concur.