

# In the Missouri Court of Appeals
# Eastern District

## DIVISION III

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED98978 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Timothy J. Wilson |
| DARION JORDAN IVY, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 25, 2014 |

### Introduction

Appellant Darion Ivy ("Ivy") appeals from the judgment of the trial court following his conviction by a jury of one count of first-degree robbery, Section 569.020.[1] Ivy was sentenced to 12 years in the Missouri Department of Corrections. On appeal, Ivy argues that the trial court plainly erred in denying his request for a mistrial when the State failed to disclose to the defense a statement that Ivy made to a police recruit. In his second point on appeal, Ivy asserts that the trial court clearly erred in denying his motion to suppress identification and abused its discretion in overruling his objections at trial to the testimony of Dean Morgan ("Morgan") regarding his

---

[1] All statutory references are to RSMo. 2000.

in-court and out-of-court identifications of Ivy. Finding no error, we affirm the judgment of the trial court.

Factual and Procedural History

Viewed in the light most favorable to the verdict, the evidence introduced at trial is as follows. On December 11, 2010, Morgan and Johnny Irving drove in Morgan's Cadillac Escalade to the 3200 block of Hebert in the City of St. Louis to pick up some tools to repair Morgan's leaking roof. Irving got out of the vehicle to retrieve the tools while Morgan stayed in the driver's seat, playing with his phone. Morgan noticed a black truck pull up behind him, and shortly thereafter he heard a tap on his window. Morgan looked up and saw a man later identified as Gesonia Williams pointing two guns at Morgan's head, telling Morgan to get out of the vehicle. Morgan got out of the Escalade and was searched by Williams while a second man stood by Irving. The second man, later identified as Ivy, then put a gun up to Morgan and also searched him. Ivy was not wearing a mask, allowing Morgan to see his face clearly. Ivy and Williams then took Morgan's Escalade, along with Morgan's wallet, cell phone, iPod, radar detector, and laptop.

Morgan and Irving walked to Morgan's mother-in-law's house, where Morgan called the police. Morgan described Ivy to the police as a dark-skinned, stocky man who was five-feet, seven-inches tall and had facial hair. Morgan said Ivy was wearing a black, puffy leather jacket. An officer with the St. Louis Metropolitan Police Department broadcasted Morgan's description of the suspects and the stolen vehicle.

Officer Kyle Chandler heard the dispatch call for the carjacking and recalled seeing a vehicle that matched the description of Morgan's Escalade. Officer Chandler returned to the location where he saw the vehicle and shortly thereafter saw the Escalade going south on Grand. Officer Chandler pulled up behind the vehicle and activated his lights, at which point the vehicle

2

took off at a high rate of speed and hit a car, a truck, a light pole, and a fence before crashing into a house. Williams climbed out of the passenger window and took off running. Officer Chandler chased Williams while Officer Kevin Fodde, a recruit who had been riding with Officer Chandler, stayed with the patrol car and observed Ivy exiting the Escalade. Ivy approached Officer Fodde and said he was injured.

Morgan's brother-in-law was driving Morgan home when they saw Morgan's Escalade wrecked on North Grand. Morgan informed a police officer on the scene that he had been carjacked and that the wrecked car belonged to him. Morgan also saw Ivy sitting on the curb, handcuffed, and identified Ivy to police as the man who robbed him. Three days after the incident, Morgan was asked by the police to identify the person who robbed him via a photographic lineup. Morgan chose Ivy with "a hundred percent" certainty.

Ivy was subsequently charged as a prior offender with one count of first-degree robbery, Section 569.020, one count of first-degree attempted robbery, Section 564.011, two counts of armed criminal action, Section 571.015, and one count of second-degree tampering with a motor vehicle, Section 569.090.

In March 2012, a jury found Ivy guilty of second-degree tampering. However, the trial court declared a mistrial as to the count of first-degree robbery because the jurors could not reach a verdict. Ivy was found not guilty as to all other counts.

In May 2012, Ivy was tried again before a jury on the count of first-degree robbery. At the close of all of the evidence, the jury found Ivy guilty. The trial court entered judgment accordingly and sentenced Ivy to 12 years in the Missouri Department of Corrections. This appeal follows.

3

## Points on Appeal

In his first point on appeal, Ivy claims that the trial court plainly erred in denying his request for a mistrial when the State failed to disclose to the defense a statement that Ivy made to Officer Fodde. In his second point on appeal, Ivy asserts that the trial court clearly erred in denying his motion to suppress identification and abused its discretion in overruling his objection at trial to Morgan's testimony regarding his in-court and out-of-court identifications of Ivy.

## Standards of Review

In order to preserve an issue for appeal in a jury-tried case, the allegation of trial court error must be included in a motion for new trial. State v. Johnson, 943 S.W.2d 285, 289 (Mo. App. E.D. 1997). An allegation of error not included in a motion for new trial is reviewable by this Court only for plain error. Id. Because Ivy did not include in his motion for new trial his claim that the trial court erred in not granting his request for a mistrial, we review his first point on appeal only for plain error.

Under plain error review, the movant must demonstrate that the trial court committed an error which is "evident, obvious, and clear" and that such error resulted in a "manifest injustice or miscarriage of justice." Rule 30.20[2]; State v. Roper, 136 S.W.3d 891, 900 (Mo. App. W.D. 2004). If the movant has carried the burden of producing an error that facially produced manifest injustice or a miscarriage of justice, we will consider whether the claimed error did in fact cause manifest injustice or a miscarriage of justice. State v. Baumruk, 280 S.W.3d 600, 607-08 (Mo. banc 2009).

This Court will reverse a ruling on a motion to suppress only if the ruling is clearly erroneous. Foster v. State, 348 S.W.3d 158, 161 (Mo. App. E.D. 2011). If the ruling is

---

[2] All rule references are to Mo. R. Crim. P. (2010).

plausible, in light of the record viewed in its entirety, we will not reverse even if we would have weighed the evidence differently. State v. Ashby, 339 S.W.3d 600, 603 (Mo. App. E.D. 2011). We review the factual findings only to determine whether they are supported by substantial evidence and give deference to the trial court's ability to weigh the credibility of the witnesses. Id. We view the facts in the light most favorable to the judgment and disregard all contrary evidence and inferences. Id.

We will reverse the trial court's admission of identification testimony only if the trial court abused its discretion. Foster, 348 S.W.3d at 161.

Discussion

## I.     The trial court did not plainly err in denying Ivy's request for a mistrial.

In his first point on appeal, Ivy argues that the trial court plainly erred in denying his request for a mistrial when the State failed to disclose to the defense a statement that Ivy allegedly made to Officer Fodde. Ivy claims that the State's failure to disclose that Ivy allegedly told Officer Fodde that he had been "hit by the car" resulted in a manifest injustice or miscarriage of justice because he was unable to prepare a strategy, prior to trial, to address the statement.

Rule 25.03(A)(2) requires the State to provide to the defendant, upon written request, the substance of any oral statements made by the defendant. Rule 25.03(A)(2). The purpose behind this rule is to "grant the defendant a decent opportunity to prepare his case in advance of trial and avoid surprise." State v. Jamison, 163 S.W.3d 552, 557 (Mo. App. E.D. 2005). Compliance with this rule is mandatory; however, appellate courts "will intervene only where a defendant shows that the failure to make a timely disclosure resulted in fundamental unfairness." Id. "Fundamental unfairness turns on whether there was a reasonable likelihood that an earlier disclosure of the requested evidence would have affected the result of the trial." Id.

During Ivy's first trial, Officer Fodde testified that after the Escalade crashed, Ivy stumbled out of the vehicle, came up to Officer Fodde, and said that his leg was injured. However, at Ivy's re-trial, Officer Fodde testified that Ivy said he was injured and that he got hit by the vehicle. Ivy claims that the State's failure to disclose Ivy's statement that he got hit by the vehicle surprised the defense and prevented the defense from preparing a strategy to address the evidence. Ivy also suggests that the evidence was incriminating because it connected him with the stolen Escalade and made it seem like Ivy had a guilty conscience and was therefore trying to distance himself from the vehicle. As a result, the defense should have had the opportunity to address the statement.

The State should have disclosed Ivy's statement prior to trial, and the failure to do so violated the requirements of Rule 25.03(A)(2). However, upon reviewing the totality of the record before us, we are not persuaded that the State's failure to disclose Ivy's statement prior to trial resulted in fundamental unfairness given the overwhelming evidence of Ivy's guilt. See Jamison, 163 S.W.3d at 557. At trial, Morgan testified that Ivy, along with Williams, stole the Escalade from him at gunpoint. The State also produced evidence that Morgan identified Ivy shortly after the incident and again in a photographic lineup with one hundred percent certainty. Additionally, Officer Fodde testified that he witnessed Ivy get out of Morgan's Escalade after the vehicle crashed.

Ivy argues that the State's failure to disclose the statement hindered his ability to develop a defense because the statement contradicted the defense's theory. Ivy further contends that had a mistrial been granted, he would have had time to decide whether to testify in order to deny making the statement to Officer Fodde. While sympathetic to Ivy's argument that the failure to disclose the statement before trial adversely impacted his ability to develop a defense, the lack of disclosure was a minor impediment to Ivy's defense in light of the overwhelming evidence of his

6

guilt. We are unwilling to characterize the State's failure to disclose Ivy's statement as outcome determinative. Moreover, the record shows that the trial court took a recess to allow Ivy additional time to consider whether to testify. The trial court warned Ivy that were he to testify, the State could bring up his prior robbery conviction. After consulting with his attorney, Ivy decided not to testify. Given these facts, we reject Ivy's argument that the granting of a mistrial would have affected his decision not to testify.

Because Ivy has failed to prove that an earlier disclosure of the statement would have affected the outcome of the trial, the State's failure to disclose the statement did not result in fundamental unfairness. Likewise, any failure by the State to disclose the statement did not cause manifest injustice or a miscarriage of justice, and the trial court did not plainly err in denying Ivy's request for a mistrial. See Baumruk, 280 S.W.3d at 607-08.

Point One is denied.

## II. The trial court did not err in denying Ivy's motion to suppress identification or abuse its discretion in allowing Morgan to testify regarding his identifications of Ivy.

In his second point on appeal, Ivy claims the trial court clearly erred in denying his motion to suppress identification and abused its discretion in allowing Morgan to testify regarding his in-court and out-of-court identifications of Ivy.

Prior to trial, Ivy filed a motion to suppress any in-court or out-of-court statements made by Morgan identifying Ivy as one of the people that robbed him. The motion to suppress argued that the photographic line-up performed three days after the robbery was inherently suggestive because Morgan had seen Ivy handcuffed next to the wrecked Escalade. As a result, any out-of-court identification of Ivy was tainted and should be suppressed. Ivy further asserted that any in-court identification of Ivy also would be tainted by the suggestive identification procedures and would give rise to a substantial likelihood of misidentification. The trial court denied Ivy's

motion. Ivy also objected at trial to Morgan's in-court identifications of Ivy as well as Morgan's testimony regarding the photographic line-up. The trial court overruled Ivy's objections.

Courts apply a two-prong test to determine whether identification testimony is admissible. Foster, 348 S.W.3d at 161. First, the court must determine whether the pre-trial identification procedure was unduly suggestive. Id. at 162. A pre-trial identification procedure is unduly suggestive only if the identification is the result of the procedures used by the police rather than a result of the witness's recollection. Id. "The key issue in determining whether unduly suggestive pre-trial procedures tainted the identification is whether the witness has an adequate basis for the identification independent of the suggestive procedure." State v. Floyd, 347 S.W.3d 115, 125 (Mo. App. E.D. 2011) (quoting State v. Chambers, 234 S.W.3d 501, 513 (Mo. App. E.D. 2007)). If the procedure is not unduly suggestive, any pre-trial and in-court identification is admissible. Foster, 348 S.W.3d at 162.

If the procedure is unduly suggestive, the court must proceed to the second prong and determine "whether the suggestive procedures have so tainted the identification as to lead to a substantial likelihood that the pre-trial identification was not reliable." Id. (quoting Chambers, 234 S.W.3d at 513). If the procedure is unduly suggestive, the pre-trial identification will be excluded. Chambers, 234 S.W.3d at 513. "Similarly, if the court finds that the suggestive procedures have so affected the witness as to lead to a substantial likelihood that an in-court identification would not be reliable, then no in-court identification will be permitted." Id.

Ivy argues that the pre-trial identification procedure used in this case was unduly suggestive because Morgan saw Ivy handcuffed by the Escalade before he viewed the photographic line-up and identified him in court. However, a pre-trial identification will be deemed unduly suggestive only if it is the result of police procedures rather than the witness's recollection. Foster, 348 S.W.3d at 161. Here, no police procedure took place that could have

8

tainted Morgan's identification of Ivy. The police did not arrange for Morgan to identify Ivy while he was handcuffed next to the wrecked Escalade. Rather, Morgan unexpectedly came across his vehicle while his brother-in-law was driving him home. We find Ivy's assertion that these facts somehow constitute a police show-up to be unpersuasive.[3]

Even if the police had arranged for a show-up, Missouri courts "routinely hold such show-ups are not unduly suggestive, even when the suspect is in handcuffs, and particularly when the police make no overt remarks concerning the subject's identity." State v. Williams, 717 S.W.2d 561, 563 (Mo. App. E.D. 1986). In Williams, the defendant broke into the victims' home, stole a purse, and drove off in the victims' car. Id. at 561-62. The victims called the police and gave a general description of the defendant. Id. at 162. A police officer heard the broadcasted description of the stolen vehicle and began chasing a vehicle that matched the description. Id. The defendant wrecked the stolen car, and the officer arrested him. Id. The victims then were escorted by police to the accident scene, where the defendant was handcuffed between two uniformed police officers and was standing next to the stolen purse. Id. Upon arriving at the accident scene, the victims immediately told the police that the defendant was the person that robbed them. Id. Because the victims identified the defendant within one hour of the robbery and the police made no overt suggestions concerning the defendant's identity, this Court determined that the show-up was not unduly suggestive. Id. at 563. See also State v. Dodson, 491 S.W.2d 334, 338 (Mo. banc 1973) (show-up that occurred while defendant was handcuffed in backseat of police car was not unduly suggestive when identification occurred 30 minutes after crime was committed and police made no suggestion that defendant was the robber); State v. Tunstall, 848 S.W.2d 530, 532 (Mo. App. E.D. 1993) (show-up was not unduly suggestive even

---

[3] A show-up occurs when police arrange for a one-on-one confrontation between the suspect and a witness to a crime shortly after the time of the crime. See State v. Blanchard, 920 S.W.2d 147, 150 (Mo. App. E.D. 1996).

though defendant was handcuffed and in the presence of uniformed police officers when identified by the witnesses at the scene); State v. Ralls, 583 S.W.2d 289, 291 (Mo. App. W.D. 1979) (witness identification that occurred while defendant was handcuffed next to police car was reliable because it was the result of the witness's own observation and recollection of the defendant's appearance rather than a response to the suggestion or encouragement of the police).

Similarly, we find that Morgan's pre-trial identification of Ivy was not the result of an unduly suggestive procedure. Morgan just happened to come upon the accident scene, where he immediately identified Ivy as the person that robbed him. The police did nothing to suggest that Ivy was the robber, and there is nothing in the record to suggest that Morgan's identification of Ivy was based on anything other than his memory of the crime, which had occurred less than two hours earlier. Because no unduly suggestive pre-trial identification procedure occurred that could have tainted Morgan's identification of Ivy, both Morgan's in-court and out-of-court identifications of Ivy were admissible at trial. See Foster, 348 S.W.3d at 162.

The trial court did not clearly err in denying Ivy's motion to suppress identification or abuse its discretion in allowing Morgan to testify regarding his in-court and out-of-court identifications of Ivy.

Point Two is denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
Kurt S. Odenwald, Judge

Mary K. Hoff, P.J., Concurs
Angela T. Quigless J., Concurs

10