

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101482 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the City of St. Louis |
| vs. | ) | Circuit Court |
| | ) | |
| TJ RUSSELL, | ) | Honorable Michael F. Stelzer |
| | ) | |
| Appellant. | ) | Filed: June 9, 2015 |

### Introduction

T.J. Russell (Defendant) appeals the judgment and sentence of the Circuit Court of the City of St. Louis entered after a jury convicted him of first-degree murder and armed criminal action. In two points relied on, Defendant claims that the trial court (1) clearly erred in admitting the identification testimony of three witnesses and (2) plainly erred by allowing the State's comments regarding deliberation in closing argument. We affirm.

### Factual Background

On March 19, 2011, Charlene Otey and Dennis Fox visited Kenyatta Moore's apartment. Otey and Moore were drinking "Syrup" (a combination of NyQuil and painkillers) and Fox had ingested heroin. Jermaine Johnson and Antoine Rayner came to the apartment. After Moore opened the door and let them inside, Defendant came down the hallway and started shooting at

Rayner. Defendant asked Rayner, "Where is my money? Where is my phone?" After the shooting, Defendant ran. Rayner died as a result of his gunshot wounds.

Defendant was charged with first-degree murder and armed criminal action. Prior to trial, defense counsel filed a pre-trial motion to suppress identification evidence. In the motion, defense counsel argued that Moore, Otey, Fox, and Johnson's identifications of Defendant as the shooter should be suppressed because (1) Moore knew and had a relationship with Defendant prior to the shooting; (2) all of the witnesses were under the influence of drugs at the time of the shooting; and (3) the apartment was not well-lit during the incident. The trial court denied the motion, finding that defense counsel's objections to the identifications went to the weight, not the admissibility, of the identifications.

At Defendant's trial, the State presented the testimony of Officer Michelle Vetter, who responded to the scene after Rayner was shot. The State also presented the testimony of Kenyatta Moore. Moore recalled that on March 19, she, Otey, and Fox were at her apartment when Johnson and Rayner arrived. Moore said that Rayner entered the apartment before Johnson, and then she "heard claps." She testified that Defendant was standing in the doorway, holding a gun, and that she told Defendant to stay at her apartment. Moore went to tend to Rayner, and when she looked up again, Defendant was gone. Later that night, Moore spoke to homicide detectives and told them Defendant shot Rayner. Moore identified Defendant in a photo line-up. On cross-examination, Moore admitted that she had done drugs that day and she, had been drinking "Syrup" prior to the shooting.

Charlene Otey also testified on behalf of the State. She testified that she did not know Defendant prior to the shooting. That evening, she had "dozed off" on the couch, and the sound of three gunshots woke her up. She testified that she saw a man standing in the doorway, and

2

saw Rayner and Johnson run into the kitchen. She recalled that the man in the doorway said, "Where's my money at? Where's my phone at?" Otey testified that she went to the police department and identified the person who shot Rayner. Defense counsel objected, as follows:

> [Defense Counsel]: I'm going to object at this point based on my pretrial motions to suppress the identification. When the procedures that were used were suggest[ive] and her basis for identifying him [w]as based on the information she got from other person, not her own observations.

> [The State]: Your Honor, she is taken from the scene to homicide. She doesn't know the guy's name. No one told her anything. She learns his name later and then she knows the name. It certainly doesn't affect her ability to identify this piece of paper.

> [The Court]: I don't think it's an issue of suppression. There may be some credibility issues you can bring out, but I don't think it's about suppression. I am going to deny the request.

> [Defense Counsel]: May I have a continuing objection?

> [The Court]: Yes, you may.

Otey then recalled that she identified Defendant as the shooter in a photo line-up. On cross-examination, Otey again admitted she was high at Moore's apartment the night of the shooting.

Jermaine Johnson and Dennis Fox testified similarly. On cross-examination, both Johnson and Fox admitted that they had done heroin that day. Fox testified that he was sitting on the couch next to Otey, dozing, and that the gunshots "blew [his] high." Fox also testified that both Otey and Moore told him Defendant's name before he talked to the police.

The State also presented the testimony of Douglas Eatherton, an evidence technician; Detective Thomas Walsh, who investigated the shooting; Steven Taubenheim, a former computer forensics investigator; Officer David Menendez, a firearms examiner; and Dr. Jane Turner, a medical examiner. Defendant did not present any evidence.

3

During closing argument, the State discussed the elements of first-degree murder with the jury. Regarding deliberation, the State argued the following:

> What's deliberation? Cool reflection for any amount of time no matter how brief, okay? Let's talk about what cool reflection is. Under the law cool reflection is not, I got to sit down, I got to write out a plan. I gotta tell somebody about it. Maybe I need to get some help. That's not cool reflection, ladies and gentlemen. Cool reflection under the law, deliberation under the law is that reflection for any length of time no matter how brief, okay?
> So for argument sake, pulling a gun out of a waistband is deliberation on its own. So pulling a gun, aiming it, pulling the trigger, not one, not two, not three, but at least four times is without a doubt deliberation. That is a conscious decision made by the shooter, and that, ladies and gentlemen, is deliberation.

The jury found defendant guilty of first-degree murder and armed criminal action. Defendant was sentenced to life in prison without parole for first-degree murder, to run consecutively with his 30 year sentence for armed criminal action.

Defendant filed a motion for new trial, arguing that the trial court abused its discretion in allowing the witnesses' identification of Defendant as the shooter because "the circumstances of the out-of-court identification were inherently suggestive and conducive to mistaken identification, in that the witnesses had discussed the identity of the shooter prior to being asked by the police to make an identification and the witnesses were under the influence of drugs at the time of the shooting." The trial court denied the motion. This appeal follows.

## Point I: Identification Evidence

In his first point on appeal, Defendant argues that the trial court erred in admitting Otey, Fox and Johnson's out-of-court and in-court identifications of Defendant as the shooter. Specifically, Defendant contends that the admission of the identifications violated his right to due process because they were inherently unreliable and that the identification evidence was more prejudicial than probative. The State argues that the identifications were reliable and admissible.

4

*Standard of Review*

This Court has discerned that Defendant raises two arguments for why the identification testimony should have been excluded. Defendant first argues that the identification evidence violates his right to due process of law. In Defendant's motion to suppress, Defendant argued that the in-court and out-of-court identifications should not be admitted because the out-of-court identifications "were inherently suggestive and conducive to mistaken identification" and that any in-court identification would be subject to the same problems. Defendant renewed this objection to the evidence when Charlene Otey testified at trial, and again in his motion for new trial. Accordingly, this issue is properly preserved for appeal. Our review of the trial court's denial of a motion to suppress is limited to whether the ruling was clearly erroneous. *State v. Ivy*, 455 S.W.3d 13, 17 (Mo. App. E.D. 2014). We review findings of fact and conclusions of law only to determine whether they are supported by substantial evidence. *Id.* at 17-18. We defer to the credibility findings of the trial court and view the facts in a light most favorable to the judgment. *Id.*

Defendant also contends that the trial court erred in admitting the identifications because prejudice to the Defendant outweighed the identifications' probative value. Generally, we review the trial court's admission of identification testimony for an abuse of discretion. *Id.* at 17. However, because this argument was never raised at the trial court, it is not preserved for review. Therefore, we review only for plain error under Rule 30.20, and we will affirm unless we find that the trial court committed an error which caused manifest injustice or a miscarriage of justice. *State v. Floyd*, 347 S.W.3d 115, 123 (Mo. App. E.D. 2011). Under the plain error standard, the defendant must show that the trial court committed an error which is "evident, obvious, and

5

clear" and that such error resulted in a manifest injustice or a miscarriage of justice. *Id.* at 123-24.

*Discussion*

*A. Due Process & the Reliability of the Witnesses' Identifications*

"Identification testimony is admissible unless the pretrial identification procedure is impermissibly suggestive, and this suggestive procedure made the identification unreliable." *Floyd*, 347 S.W.3d at 125 (internal citations omitted). A pre-trial identification is unduly suggestive if the identification is not based on the witness's first-hand recollection, but rather the result of suggestive police procedures. *Id.* The issue is whether the witness had an adequate, independent basis for the identification. *Id.* Further, the identification will only be inadmissible if the identification procedures were so suggestive that they created a "very substantial likelihood of irreparable misidentification." *Id.* (internal citations omitted).

In addressing the reliability of the witness's identification, we look to five factors: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the interval between the event and the identification procedure. *Id.*

Defendant does not argue that the police procedures in this case were impermissibly suggestive. Defendant concedes that for the court to address the reliability of the witness's identification, the court must first determine that the police procedures were unduly suggestive. *See Perry v. New Hampshire*, 132 S.Ct. 716, 730 (2012). In *Perry*, the United States Supreme Court dealt with an argument similar to Defendant's. The defendant in *Perry* argued that courts should address the reliability of eyewitness identification even if the police procedures were not

6

suggestive. *Id.* at 725. In support of his argument, the defendant cited *Manson v. Braithwaite*, in which the Supreme Court stated that "reliability is the linchpin in determining the admissibility of identification testimony." 432 U.S. 98, 114 (1977). The defendant argued that if reliability is the most important due process issue regarding admissibility, courts should examine the reliability of witnesses regardless of whether there were suggestive police procedures. *Perry*, 132 S.Ct. at 725. However, the *Perry* Court noted that the determination of reliability "comes into play only after the defendant establishes improper police conduct." *Id.* at 726. The reliability or unreliability of the identification determines whether the exclusion of the evidence is the appropriate remedy. *Id.* The Court discussed the potential consequences of adopting the defendant's argument, specifically that to do so would call for courts to review, prior to trial, "most, if not all, eyewitness identifications" and would result in a "vast enlargement of the reach of due process as a constraint on the admission of evidence." *Id.* at 727. Further, the Court reiterated that the unreliability of a witness's identification does not make its admission "fundamentally unfair," nor does its admission always rise to the level of a due process violation. *Id.* at 728.

This Court has also addressed a similar argument in *State v. Body*, 366 S.W.3d 625 (Mo. App. E.D. 2012).[1] In *Body*, the defendant argued that the identification evidence violated his due process rights and was more prejudicial than probative. *Id.* at 628. Body argued that the police procedures were subtly suggestive because the victim was told he may have to identify the perpetrator and that the defendant was the only person present in both the photo line-up and the physical line-up. *Id.* at 631. The Court did not find any evidence of police misconduct. *Id.*

---

[1] The Court notes that defense counsel in this case also served as defense counsel in *Body*, and once again raises similar arguments for this Court's consideration.

Accordingly, the Court denied the defendant's point on appeal and did not address the reliability of the witness's identification. *Id.*

In this case, Defendant does not argue on appeal that the police procedure was unduly suggestive. At trial, defense counsel stated that the procedures were suggestive but nothing more. Because Defendant failed to show police misconduct in the identification process, Defendant's due process argument fails. *Perry*, 132 S.Ct. at 726.

### B. Legal Relevance of the Witnesses' Identifications

Defendant also contends that the identifications should have been excluded because their unreliability outweighed their probative value, which resulted in prejudice to Defendant. Indeed, identification testimony may be inadmissible if its probative value is outweighed by prejudice to the defendant. *Perry*, 132 S.Ct. at 729; *Body*, 366 S.W.3d at 632. The State argues the identifications did not result in any prejudice to Defendant.

Evidence must be both logically and legally relevant to be admissible. *State v. Davis*, 318 S.W.3d 618, 639 (Mo. banc 2010). Evidence is logically relevant "if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* Logically relevant evidence must also be legally relevant, meaning that its probative value must outweigh its prejudice to the defendant. *Id.* at 640.

Defendant argues that unreliability of the witnesses' identifications had a potential to confuse or mislead the jury that outweighed the probative value of their testimony. In support of his claim, Defendant utilizes the reliability factors generally used in considering whether the admission of identification testimony violates due process. *Floyd*, 347 S.W.3d at 125. Regarding the first two factors – the opportunity of the witness to view the subject and the

8

witness's degree of attention – Defendant argues that Otey, Johnson, and Fox could not have had great opportunity to view the witness or had a high degree of attention because they were admittedly under the influence of drugs and the hallway was not well-lit. Defendant next argues that the accuracy of the identification testimony is also suspect, as the witnesses contradicted themselves and none of the witnesses knew Defendant prior to the shooting. Defendant also compares the case to *State v. Body*, in which this Court held that "the record does not contain evidence that [the victim] was objectively incapable of perceiving his assailant, such as might render the evidence minimally probative and highly prejudicial." 366 S.W.3d at 632. Defendant maintains that the evidence in this case presents objective facts that make the witnesses' identifications unreliable.

We disagree. While Otey, Johnson and Fox all admitted to being under the influence of drugs the day of the shooting, and there are some inconsistencies in their statements regarding the shooting in the time leading up to trial, these evidentiary problems do not rise to the level of outweighing the identifications' probative value such that the evidence should have been excluded. While Otey admitted she had done "syrup" the night of the shooting, she also recalled that she woke up when she heard the gunshots, she saw Defendant standing in the doorway with a gun, Defendant yelled questions at Rayner, and Defendant approached her and held a gun up to her. Otey then identified Defendant in a photo line-up the same night as the shooting. Johnson testified about going into the apartment with Rayner, Defendant jumping out and shooting Rayner at close range, and Defendant yelling about a phone or money. Johnson left the apartment after the shooting and spoke with the police a few months later and identified Defendant. Fox also testified about the night of the shooting. Fox did not speak with police until

9

a few months after the shooting, and identified two potential suspects from the photo line-up, including Defendant. At trial, the three witnesses identified Defendant as the shooter.

The alleged deficiencies in the witnesses' testimony were issues that Defendant had the opportunity to address, and did in fact address, on cross-examination. Defendant fails to show that the identification evidence confused or misled the jury. The jury, as the fact-finder, was given the opportunity to determine the credibility and reliability of the identifications. *State v. Belton*, 949 S.W.2d 189, 192 (Mo. App. W.D. 1997) ("Reliability and credibility are issues for the jury to decide").

The trial court did not err, plainly or otherwise, in admitting the witnesses' identifications. Point I is denied.

### Point II: Closing Argument

In his second point, Defendant argues that the trial court erred in permitting the prosecutor to comment on deliberation during closing argument. Defendant contends that the prosecutor misstated the law, which misled the jury, and affected their verdict. The State counters that it did not misstate the law, and in any event, the jury was properly instructed regarding deliberation.

*Standard of Review*

Defendant concedes that this issue was not raised before the trial court and is therefore not properly preserved for review. Accordingly, this point is subject only to plain error review. Rule 30.20. We will affirm the judgment of the trial court unless we find that the trial court committed an error which caused manifest injustice or a miscarriage of justice. *Floyd*, 347 S.W.3d at 123. Under the plain error standard, the defendant must show that the trial court

committed an error which is "evident, obvious, and clear" and that such error resulted in a manifest injustice or a miscarriage of justice. *Id.* at 123-24.

*Discussion*

Defendant argues that the State's closing argument regarding deliberation misstated the law, which resulted in manifest injustice to Defendant. Specifically, Defendant takes issue with the following statements by the prosecutor during closing argument:

> So for argument sake, pulling a gun out of a waistband is deliberation on its own. So pulling a gun, aiming it, pulling the trigger, not one, not two, not three, but at least four times is without a doubt deliberation. That is a conscious decision made by the shooter, and that, ladies and gentlemen, is deliberation.

Defendant maintains that the phrase "conscious decision" is not the equivalent of "deliberation," and that the prosecutor's statements misled the jury into convicting Defendant of first-degree murder with the wrong definition of deliberation in mind. The State argues that the prosecutor did not misstate the law and that there was no manifest injustice to Defendant because the jury was properly instructed on deliberation.

Generally, plain error "will seldom be found in unobjected closing argument." *State v. Walters*, 363 S.W.3d 371, 376 (Mo. App. E.D. 2012) (internal citations omitted). Resulting prejudice from plain error in closing argument "can normally be cured by an instruction to the jury." *Id.* Additionally, "closing arguments must be interpreted with the entire record rather than in isolation." *State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003).

Having reviewed the entire record, the prosecutor's statement regarding deliberation did not result in plain error. In closing argument, the State emphasized the legal definition of deliberation – "[c]ool reflection for any amount of time no matter how brief." To support his claim, Defendant cites *State v. Johnson*, in which the Missouri Supreme Court held that the State's interchangeable use of "deliberation," "cool reflection," and "conscious decision" in

11

closing argument was not plain error. 284 S.W.3d 561, 574 (Mo. banc 2009). Defendant differentiates this case from *Johnson* because here, the State "superseded" the correct definition of deliberation with the phrase "conscious disregard," and the argument that "pulling a gun out of a waistband is deliberation on its own." However, as the Court in *Johnson* stated, "[t]he use of ["conscious decision"] in closing argument, especially after reciting the actual language of the instruction, was not plain error." *Id.* In the instant case, the jury was properly instructed on the meaning of deliberation in Jury Instruction No. 6[2], and it is presumed that juries follow the instructions given to them. *Id.* Accordingly, the trial court did not plainly err in failing to intervene, *sua sponte*, during the State's closing argument. Point II is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.

---

[2] The instruction defined deliberation as "cool reflection upon the matter for any length of time no matter how brief."