

# In the Missouri Court of Appeals Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED99366 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1022-CR06311-01 |
| | ) | |
| CEMON BYRD, | ) | Honorable Julian L. Bush |
| | ) | |
| Respondent. | ) | Filed: March 11, 2014 |

## Introduction

Cemon Byrd (Defendant) appeals the trial court's judgment and sentence after a jury convicted him of robbery in the first degree and armed criminal action. Defendant argues the evidence at trial was insufficient to establish his identity as the perpetrator of these crimes, and he argues the trial court committed error by allowing certain closing argument and testimony. We affirm.

## Background

Viewed in the light most favorable to the verdict, the evidence at trial was as follows. Martez Mayo (Victim) drove a gold GMC Yukon with tires, rims, and chrome door handles and mirrors, that were all upgraded from what came on the vehicle originally. On November 1, 2010, Victim stopped to get gasoline at a BP gas station

located on West Florissant and Adelaide, in the City of St. Louis. Victim needed gas, but he did not want to stop at this particular station because he believed it was in a bad neighborhood. He decided to purchase only five dollars' worth of gas to enable him to drive to a different gas station in a better neighborhood. Victim pulled into the gas station and parked at the pump closest to West Florissant.

As Victim was walking inside to pay the cashier, a new silver Toyota Camry pulled up to the pump next to his Yukon. Victim noticed the Camry did not have license plates. There were four people seated inside the Camry. As Victim came outside after paying the cashier, he crossed paths with one of the passengers of the Camry. Victim returned to his car and put the gas pump into the gas tank. Then Victim got back into his car and locked the doors while he waited for the gas to dispense. Victim could see the passengers of the Camry staring at his Yukon.

When the gas finished pumping, Victim got out of his car to remove the gas pump. When he turned around, Defendant, who had been sitting in the front passenger seat of the Camry, was standing close to Victim and pointing a gun at him. Defendant said, "Give it up." Victim asked if Defendant was serious, and then Victim asked if he could get his phone and wallet out of the Yukon. Defendant said that if Victim said anything else, Defendant was going to blow Victim's head off. Victim threw the keys up in the air, and Defendant caught them. Defendant kept the gun pointed at Victim as he got into the Yukon and drove away. The Camry also drove away at that point. Victim went inside the store and called 911.

A few weeks later, police notified Victim that they had found his Yukon. Police also discovered one of the license plates from Victim's Yukon affixed on a stolen Toyota

2

Venza (Venza) that had been recovered. Police lifted fingerprints from both the Yukon and the Venza. In addition to a number of unidentifiable prints, they confirmed the identity of two prints on each car. On the Yukon, they found a print from Victim and one from the man who repaired Victim's car after police recovered it. On the Venza, police found Defendant's print on the front passenger door. Also, on the license plate that had come from Victim's Yukon, which was now affixed on the Venza, police found a print belonging to a man named Marcus Brown, whom Victim later identified as one of the individuals in the Camry.

Based on this evidence, Detective Jerry Griffin created two photo spreads, each containing six pictures of men with similar physical characteristics. One photo spread contained Defendant's picture, and the other photo spread contained Marcus Brown's picture. Detective Griffin then showed each of the photo spreads to Victim. Victim identified Defendant as the person who robbed him. Victim also identified Marcus Brown as the person he had passed when exiting the gas station. Detective Griffin later arranged a live lineup, which took place on December 2, 2010. Victim again identified Defendant as the person who robbed him. Victim testified he was one hundred percent certain when he made each identification of Defendant. During the robbery, Victim had focused on the robber's unmasked face so that he would remember it.

Finally, the State presented evidence at trial that on the date of the robbery, Defendant was on probation for an unrelated crime and was under house arrest. During that time, Defendant wore an ankle bracelet with GPS technology that monitored his whereabouts. James Buck, a senior product manager for the company that made Defendant's ankle bracelet, testified that during the time of the robbery, the GPS data

3

collected from Defendant's bracelet showed that he was in the vicinity of the gas station where the robbery took place, and that he was stationary during the time of the robbery. The GPS data provided a specific location point for Defendant each minute, but due to general environmental circumstances, in reality Defendant could have been anywhere within a 50- to 60-feet radius of that point, which Mr. Buck called the "circular error of probability." Specifically concerning the time of the robbery, one particular environmental circumstance was a large metal awning covering the gas station that likely distorted the GPS signal. Therefore, while Mr. Buck could not say with certainty that Defendant was at the gas station during the robbery based on the location points given by the GPS data, he testified it was possible because the gas station was within the circular error of probability given the environmental circumstances.

The jury convicted Defendant of robbery in the first degree and armed criminal action. The trial court later sentenced Defendant to terms of sixteen years' imprisonment for first-degree robbery and seven years for armed criminal action, to be served concurrently. This appeal follows.

## Discussion

Defendant raises three points on appeal. In Point I he argues the evidence was insufficient to prove beyond a reasonable doubt that Defendant was the person who robbed Victim. Defendant argues in Point II that the trial court abused its discretion in overruling his objection to certain statements the prosecutor made during closing argument regarding why the State did not present the gun used in the robbery as evidence. Finally, Defendant argues in Point III that the trial court plainly erred in admitting testimony regarding other cars that were stolen in the area, as well as evidence

4

that the neighborhood where the robbery took place was a "bad neighborhood." We discuss each in turn.

Point I

Defendant does not dispute that the elements of robbery were present at trial and that Victim was robbed at the gas station as Victim testified. Defendant simply argues there was insufficient evidence to establish Defendant's identity as the robber. To support this claim, Defendant specifically argues that Victim's description of the robber to police did not match Defendant, that Defendant's fingerprints were not on the Yukon, and that the GPS data is inaccurate and inconsistent. We disagree.

Standard of Review

Appellate review of a claim of insufficient evidence supporting a criminal conviction "is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." State v. Chaney, 967 S.W.2d 47, 52 (Mo. banc 1998). We give great deference to the trier of fact, accepting as true all evidence and reasonable inferences favorable to the State, and disregarding all evidence and inferences to the contrary. Id.

Analysis

We find sufficient evidence in the record from which a reasonable juror could have found Defendant guilty beyond a reasonable doubt. "The testimony of a single witness is sufficient to establish the identity of a defendant if the jury believes it beyond a reasonable doubt." State v. Wren, 317 S.W.3d 111, 120 (Mo. App. E.D. 2010) (quoting State v. Barnes, 917 S.W.2d 606, 607 (Mo. App. E.D. 1996)). Here, Victim identified Defendant on separate occasions in a photo spread and a live lineup, each time saying he

5

was one hundred percent certain Defendant was the robber. Victim also identified Defendant at trial as the man who robbed him. Defendant argues there were inconsistencies between the description of the robber that Victim gave to police and Defendant's actual appearance, namely, regarding Defendant's height, build, bone structure, and whether he had tattoos on his arms and hands. However, despite any perceived inconsistency,[1] Victim nevertheless positively identified Defendant as the robber on three separate occasions. A reasonable juror could have relied on Victim's positive identifications alone as proof of Defendant's identity as the robber beyond a reasonable doubt. Wren, 317 S.W.3d at 120.

Defendant raises various additional arguments that the GPS evidence and fingerprint evidence show he was not the person who committed the robbery against Victim. However, we must disregard inferences contrary to the verdict, and here, the conflicting possible inferences raised by the circumstantial GPS and fingerprint evidence are not for us to resolve. See State v. Hamm, 710 S.W.2d 335, 338 (Mo. App. E.D. 1986) (finding "conflicting testimony . . . concerning defendant's clothing and travel time for a certain distance [were] not of grave importance when balanced against" eye witness testimony). "The jury decides whose testimony was believable and what weight to give these inconsistencies." Id. None of Defendant's arguments show that either the GPS

---

[1] Specifically, Defendant asserts that Victim's descriptions of the robber's "very good bone structure," "high cheekbones," and "slimness," did not apply to him. However, the extent to which these subjective descriptions apply to particular persons can reasonably vary among observers. Additionally, Defendant points out that Victim estimated the robber was between 5'9'' and 5'11'', whereas Defendant is 6'1''. Victim testified he is 5'5'' or 5'6'' and had to look up at the robber. A reasonable juror could believe Victim simply miscalculated the difference in height between himself and the robber. Similarly, Defendant makes much of the fact that he has tattoos on his hands and right forearm, yet Victim said the robber did not have tattoos. According to the trial transcript, the robbery lasted one minute at most, Victim focused on the robber's unmasked face in order to remember what he looked like, Defendant's tattoos were in dark ink, and it was dark outside when the robbery took place. Assuming *arguendo* Defendant had these tattoos on the date of the robbery, it is reasonable to infer that Victim simply did not notice them under these distressing circumstances.

evidence or the fingerprint evidence is clearly inconsistent with the guilty verdict. Viewing the evidence in the light most favorable to the verdict, we find sufficient evidence from which a reasonable juror could have concluded Defendant was the person who committed the robbery against Victim. Point denied.

## Point II

Defendant argues the trial court abused its discretion in allowing the following closing argument by the State:

> For Count II that's the armed criminal action[,] . . . an additional charge when we know the gun is real. That's what we know in this case. [Victim] told you that gun was real. Now, . . ., you are sitting here as jurors, because you all said it was okay if I didn't bring that gun in and put it on the table. . . . I don't have it. There's lots of reasons you can think of. Maybe it's in the river. It got passed to a friend.

Defendant's counsel objected that the prosecutor was arguing facts not in evidence, and the court overruled the objection. The prosecutor continued:

> He wasn't taken into custody until over a month after this robbery happened. . . . [T]here are lots of reasons why that gun cannot be brought in this courtroom. That doesn't mean it's not real.

Defendant argues these statements were based on facts not in evidence and prejudiced him in that they implied Defendant was responsible for the absence of the gun and created the possibility that the jury convicted Defendant for some act of concealing the gun rather than for the charged crimes. We disagree.

## Standard of Review

A trial court has broad discretion in controlling closing arguments, and we will not disturb a trial court's ruling during closing argument absent an abuse of that discretion. State v. Forrest, 183 S.W.3d 218, 226 (Mo. banc 2006). We will reverse only

7

if the trial court's ruling resulted in prejudice to Defendant, in that a reasonable probability exists that the verdict would have been different had the error not been committed. State v. Johns, 34 S.W.3d 93, 116 (Mo. banc 2000) (citing State v. Deck, 994 S.W.2d 527, 543 (Mo. banc 1999)). In interpreting a closing argument, we do not consider the disputed statements in isolation, but rather in the context of the entire record. State v. Deck, 303 S.W.3d 527, 543 (Mo. banc 2010).

### Analysis

Viewing this argument in the context of the whole record, we find no abuse of discretion on the part of the trial court. The prosecutor was making the point that the gun need not be in evidence for the jury to convict Defendant. Further, the fact that Victim was robbed was never in dispute at trial: Defendant's counsel unequivocally stated as much in his closing argument. The only disputed issue was Defendant's identity as the robber. The prosecutor's comments regarding any inferences about where the gun could be had no bearing on this issue, and in light of the other evidence of Defendant's guilt for the charged crimes, Defendant has not shown a reasonable probability that the jury's verdict would have been different had the prosecutor not made this argument. Cf. State v. Ozier, 961 S.W.2d 95, 98 (Mo. App. E.D. 1998) (improper statements of prosecutor irrelevant to issues at trial did not require reversal in light of other evidence of defendant's guilt). Point denied.

### Point III

In his final point, Defendant argues that the trial court plainly erred in allowing testimony regarding car thefts unrelated to the charged crimes and in allowing testimony

that the area surrounding the gas station was a "bad neighborhood." He argues the trial court's failure to intervene *sua sponte* resulted in manifest injustice. We disagree.

## Standard of Review

Unpreserved claims of error may be reviewed for plain error under Mo. R. Crim. P. 30.20 (2013). Review for plain error involves a two-step analysis, under which we first determine "whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." State v. Baumruk, 280 S.W.3d 600, 608 (Mo. banc 2009) (quoting State v. Brown, 902 S.W.2d 278, 284 (Mo. banc 1995)). "[P]lain errors are those which are evident, obvious, and clear." Id. (citation omitted). If we find plain error, we "proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." Id. (internal quotations omitted).

## Analysis

Defendant argues that the trial court plainly erred in admitting evidence that the Venza on which Victim's license plate was found had been stolen from a particular Toyota dealership, that several other Toyotas had been stolen from the same dealership, and that the neighborhood in which the gas station where the robbery occurred was a bad neighborhood. He argues the evidence of stolen cars implicated him in those uncharged thefts, and that evidence relating to the neighborhood impermissibly suggested that because Defendant was from that neighborhood, he was a bad person and therefore committed the robbery.

Evidence must be relevant to be admissible. State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). Relevance includes the tendency to make a material fact more or

9

less probable, and requires that the probative value of the evidence outweighs its costs. Id. Evidence of uncharged crimes or bad acts, when used for the purpose of showing the defendant has a propensity to commit such acts, is inadmissible and violates a defendant's right to be tried only for the charged offense. State v. Holleran, 197 S.W.3d 603, 608 (Mo. App. E.D. 2006). "Proffered evidence will run afoul of this rule if it shows that the defendant has committed, been accused of, been convicted of, or definitely associated with another crime or crimes." State v. Garrett, 813 S.W.2d 879, 881 (Mo. App. E.D. 1991) (quoting State v. Hornbuckle, 769 S.W.2d 89, 96 (Mo. banc 1989)). "Vague references cannot be characterized as clear evidence associating [the defendant] with other crimes." Id.

We see no plain error in the trial court's admission of this evidence, as none of it constitutes clear evidence associating Defendant with other crimes.[2] Moreover, the other evidence of Defendant's guilt was overwhelming, in that Victim identified Defendant as the robber on three separate occasions, GPS data from Defendant's ankle bracelet confirmed that he was in the area of the gas station at the time of the robbery, and Defendant's fingerprints were on the vehicle displaying Victim's stolen license plate. See State v. Carr, 50 S.W.3d 848, 855 (Mo. App. W.D. 2001) (where guilt established by overwhelming evidence, no manifest injustice even assuming *arguendo* trial court erred in admitting evidence of uncharged crimes). Point denied.

---

[2] We also note the trial court actually sustained Defendant's counsel's objection to the evidence of other car thefts at the lot where the Venza was stolen. After initially finding limited probative value of this evidence and no prejudicial effect, the court heard further argument at a side-bar and decided to sustain Defendant's objection. Thus, the witness was not permitted to answer the State's question about whether other cars had been stolen from the same lot.

10

## Conclusion

We find sufficient evidence from which a reasonable juror could have found Defendant guilty of first-degree robbery and armed criminal action beyond a reasonable doubt. We find no abuse of the trial court's discretion in its control of closing argument, nor any plain error in the trial court's admission of evidence. The judgment is affirmed.

_____
Gary M. Gaertner, Jr., Judge

Robert M. Clayton III, C. J., concurs.
Karl A. W. DeMarce, S. J., concurs.

11