

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100133 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the City of St. Louis |
| | ) | Circuit Court |
| vs. | ) | |
| | ) | Honorable Mark H. Neill |
| TIM WASHINGTON, | ) | |
| | ) | Filed: August 26, 2014 |
| Appellant/Defendant. | ) | |

### Introduction

Tim Washington (Defendant) appeals his convictions of first-degree robbery and armed criminal action. On appeal, Defendant claims that the trial court abused its discretion by allowing into evidence the pretrial and in-court identifications of Defendant. Defendant also claims that the trial court abused its discretion by failing to provide a limiting instruction when the State, in its closing argument, argued facts not in evidence and improperly shifted the burden of proof to Defendant. We affirm.

**Factual Background**

On June 2, 2011, Defendant walked into a Circle K gas station around 10 p.m. At the time, Shindell Dinkins was working as a cashier and saw, from where she stood at her cash register, Defendant enter the store carrying a large woman's bag. Dinkins kept her "eye" on Defendant because she suspected that Defendant "was probably coming in to try and stuff product in his bag."[1] Dinkins also noticed that Defendant was "oddly tall" and "so thin." As Dinkins waited on other customers, she continued to watch Defendant as he walked all the way around the store and then toward her cash register. As he approached, Dinkins saw Defendant pull a gun from the bag. When Defendant reached the register, which was open, he pushed a customer out of the way, reached across Dinkins, and took about $50 from the register while pointing the gun at Dinkins. Defendant then exited the store and walked toward a Metrolink station.

No DNA or other physical evidence linked Defendant to the scene, but the store's surveillance video showed the robbery occurring. Consistent with police department practice, an email containing a still-photo of Defendant from the surveillance video was circulated to the department. Another police officer recognized Defendant and, subsequently, a photo lineup containing Defendant's photo was prepared. Dinkins and another witness who was a customer at the scene, Rhonda Shannon, identified

---

[1] Dinkins explained that the manager of the store had warned her to "look out" for people who come into the store with bags because they may steal things.

Defendant.[2]  Defendant was arrested and, thereafter, Dinkins identified Defendant at an in-person lineup.

Defendant was charged with first-degree robbery and armed criminal action. Before trial, Defendant moved to suppress the out-of-court identification of Defendant, claiming that the photo lineup and in-person lineup were unduly suggestive. After a hearing on the motion, the trial court denied the motion without explanation.

The matter then proceeded to a jury trial, where the State presented the testimony of Dinkins and Shannon, who identified Defendant as the individual who committed the robbery. Dinkins' and Shannon's out-of-court identifications of Defendant, as well as the surveillance video, were also admitted into evidence. At the close of the State's evidence, Defendant presented evidence in support of its defense theory that Defendant's identity had been mistaken. Defendant also presented the alibi testimony of his sister, Louisa Lyes, who testified that Defendant was at her home when the robbery occurred. Ultimately, the jury convicted Defendant as charged and the trial court sentenced Defendant as a prior offender to concurrent terms of 25 years' imprisonment for each conviction. This appeal followed.

## Standard of Review

Defendant's first point on appeal relates to the trial court's decision to admit certain identification evidence. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Norman*, 145 S.W.3d 912, 919 (Mo. App.

---

[2] Shannon was the customer that Defendant pushed out of the way. According to Shannon, she saw Defendant pull out the gun. At this point, she looked directly at Defendant, he looked directly at her, and then Defendant pushed her out of the way.

S.D. 2004). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. White*, 329 S.W.3d 710, 712 (Mo. App. S.D. 2010). Error in the admission or exclusion of evidence does not justify reversal unless the error was so prejudicial that it deprived the defendant of a fair trial such that the verdict would have been different. *State v. Kreidler*, 122 S.W.3d 646, 649 (Mo. App. S.D. 2003).

Defendant's remaining two points relate to the State's comments during closing argument. "The trial court has broad discretion in controlling closing argument, with wide latitude accorded counsel in their summation." *State v. Dudley*, 51 S.W.3d 44, 57 (Mo. App. W.D. 2001) (citation and quotations omitted). "Although courts are to be careful to refrain from unduly restricting closing arguments, they have the power to confine the arguments to issues raised by the pleadings and the evidence." *State v. Forrest*, 183 S.W.3d 218, 226 (Mo. banc 2006) (quotations omitted). A trial court's decision concerning the scope of closing argument is cause for reversal only upon a showing of an abuse of discretion that resulted in prejudice to the defendant. *State v. Deck*, 136 S.W.3d 481, 488 (Mo. banc 2004). In reviewing a trial court's decision, we are to examine the closing argument at issue in the context of the entire record. *State v. Edwards*, 116 S.W.3d 511, 537 (Mo. banc 2003). To the extent that Defendant did not raise specific objections to the State's comments during closing argument, we may review Defendant's allegations for plain error. *See State v. Hopson*, 168 S.W.3d 557, 565 (Mo. App. E.D. 2005).

## Discussion

### *Point I: Identification Evidence*

In his first point relied on, Defendant claims that the trial court abused its discretion by allowing the pre-trial and in-court identifications of Defendant because the identification was the result of "impermissibly suggestive police procedures that damaged the reliability of the identification." Specifically, Defendant maintains that the photo array was unduly suggestive because Defendant was the only individual who fit the description of the robber, which rendered the identifications unreliable and tainted subsequent identifications in violation of his due process rights. The State responds that Defendant has not established that the identifications procedures were unduly suggestive and, that even if this evidence was improperly admitted, reversal is not required because other evidence sufficiently supported Defendant's convictions.

Identification testimony is inadmissible if the pretrial identification procedure was unnecessarily suggestive and the suggestive procedure made the identification unreliable. *State v. Body*, 366 S.W.3d 625, 629 (Mo. App. E.D. 2012). This test contemplates a two-prong inquiry for determining whether identification testimony is admissible. *Foster v. State*, 348 S.W.3d 158, 161 (Mo. App. E.D. 2011). First, the Court determines whether the police procedures used were impermissibly suggestive. *Id.* at 162. "Police procedure is unduly suggestive if the witness's identification of the defendant results from the procedure or actions of the police, rather than from the witness's recollections of his or her firsthand observations." *Body*, 366 S.W.3d at 629. If "the witness has an adequate basis for the identification independent of the suggestive procedure," then it cannot be

said that unduly suggestive police procedures tainted the identification. *State v. Floyd*, 347 S.W.3d 115, 125 (Mo. App. E.D. 2011).

Only if the procedure was unnecessarily suggestive does the Court reach the second prong of the inquiry whether the suggestive procedure made the identification testimony unreliable. *Body*, 366 S.W.3d at 629. "In determining the reliability of a witness's identification, we consider: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of any prior description given by the witness; (4) the level of certainty demonstrated by the witness in making the identification; and (5) the interval between the event and the identification procedure." *Floyd*, 347 S.W.3d at 125.

At the hearing on the motion to suppress and at trial, Detective Douglas McPherson testified that he created the photo lineup containing Defendant's photograph after interviewing witnesses at the scene and after a fellow police officer identified Defendant in the surveillance video. According to McPherson, Defendant's most recent mugshot on file appeared to match that of the robber described by witnesses at the scene and in the video. McPherson testified that he then created the lineup using a computer program that uses the suspect's characteristics to populate the lineup with other individuals of similar skin tone, height, weight, hair, hairstyle, and facial hair. McPherson explained that the program generates about 30 photographs of similar individuals, from which an officer then selects the five individuals that best resemble the suspect to create the lineup. In the photo spread prepared in this case, McPherson indicated that Defendant was the lightest-skinned individual of the six individuals

depicted and four out of the six individuals had some facial hair, including possibly Defendant.[3] McPherson testified that he did not notice that Defendant was wearing a similar red-checked shirt in the mugshot used for the photo lineup as Defendant wore on the night of the robbery.

About a week after the robbery, McPherson showed the photo lineup to Shannon, telling her consistent with standard procedure that "the photo lineup contains six photos, [that the] suspect may or may not be in the photos [and to] view each photo and let me know if [you recognize] anybody." Shannon testified that she immediately identified Defendant because she "noticed the face and everything about him[,] [t]he shirt, everything."

Another detective, Detective Angela Hawkins, testified that she showed the same spread to Dinkins the day after Shannon identified Defendant. Hawkins said that she told Dinkins that "the person who was responsible could or could not be depicted in these photos, and if [the person] were or were not, [you] should let me know." Dinkins testified that she identified Defendant in the photo spread and told Hawkins that she was 100 percent certain in her identification. According to Dinkins, she picked Defendant's photo because "that's [the] man that I saw rob the store." Dinkins further explained that she had not noticed that he wore a similar shirt in the lineup as on the night of the robbery, but that she identified Defendant as the robber because "[h]e was very close to

---

[3] Two individuals in the photo spread have short-trimmed mustaches, while the remaining individuals possibly have stubble or some lighter facial hair.

7

me in the store, and that's the same guy that I saw. We were face to face. It wasn't hard to pick him out."

The day after Dinkins identified Defendant in the photo spread, McPherson conducted an in-person lineup during which Dinkins identified Defendant from a viewing room. McPherson explained that he would select three other individuals of similar height, weight, and body style for the victim to view. For Defendant's lineup, McPherson indicated that he had the individuals sit down because Defendant is "very tall." Dinkins testified that she identified Defendant because she recognized "how thin his face is . . . how skinny he is," and the noticeable discolorations of his complexion. She again indicated that she was 100 percent certain in her identification. Both Shannon and Dinkins later identified Defendant at trial.

As our review of the record demonstrates, the evidence in this case does not show that the police took any action that made either the photo lineup or physical lineup impermissibly suggestive. McPherson generated the photo lineup using a computer program that selected 30 individuals similar to Defendant and then he populated the spread with the five individuals most similar to Defendant. Indeed, the record shows that all six of the individuals in the photo spread are of the same race, have a similar age, a similar hairstyle, and at least two individuals other than Defendant can reasonably be described as light-skinned African Americans. When the photo lineup was presented to Dinkins and Shannon, no threats or promises were made to either witness to secure their identification of Defendant. Rather, each witness was told that the perpetuator may or may not be in the photo spread and to simply indicate whether the robber was present.

8

Each witness thereafter identified Defendant based on their memory of the robber, their recollection of Defendant's face and, in Dinkins case, his unique features. For the in-person lineup, McPherson selected individuals similar in height, weight, and body type, and three of the four individuals (including Defendant) had lighter complexions. In addition, McPherson had the individuals sit down, given that Defendant is very tall.

Despite the neutrality of the police action and the witnesses' certainty in their identifications of Defendant, Defendant argues that these pretrial procedures were impermissibly suggestive because Defendant was the only light-skinned African American without facial hair in the lineup and the only individual to be displayed in both the photo lineup and physical lineup. However, "[d]issimilarity in physical appearance, alone, is insufficient to establish impermissible suggestion." *State v. Chambers*, 234 S.W.3d 501, 513 (Mo. App. E.D. 2007). Police are only required to use reasonable efforts to find physically similar participants, and "differences in age, weight, height, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness." *Id.* at 514. Indeed, this Court has previously concluded that merely because a defendant has the lightest complexion of the six individuals in a photo spread does not render the lineup impermissibly suggestive. *Floyd*, 347 S.W.3d at 126 (defendant's complaint that he was lightest-complected individual in a photo array did not render procedure unduly suggestive). Likewise, a police procedure is not impermissibly suggestive just because the defendant was the only individual to appear in both the photo lineup and physical lineup. *Body*, 366 S.W.3d at 631.

9

Defendant additionally highlights the fact that he wore a similar shirt on the night of the robbery as in the photo spread and alleges that this fact also renders the photo lineup unduly suggestive. However, this alleged taint arises not from police procedure, but from the coincidental fact that the shirt Defendant wore in his most recent mugshot was similar to the one he wore when he committed the robbery. As noted, an identification procedure is unduly suggestive if it arises from police procedure. *Body*, 366 S.W.3d at 629. A "taint" that originates from a nongovernmental source cannot render an identification procedure impermissibly suggestive. *State v. Glover*, 951 S.W.2d 359, 363 (Mo. App. W.D. 1997). Moreover, because both Dinkins and Shannon had an "adequate basis for the identification independent of the suggestive procedure"—their recollection of Defendant's face—it cannot be said that unduly suggestive police procedures tainted the identification. *Floyd*, 347 S.W.3d at 125.[4]

Finally, there is no merit to Defendant's argument that the "inherent deficiencies" of eyewitness identification are apparent in this case and that this matter is unlike *State v. Body*, 366 S.W.3d at 625, where this Court concluded that a photo lineup was not unduly suggestive. The psychological studies[5] Defendant references are not informative with respect to the question in this case whether the police procedures used were unnecessarily suggestive. Nor do these studies provide authority for Defendant's argument that the

---

[4] Defendant also claims that Shannon's identification of Defendant was "tainted" by her traumatic reaction to the robbery, but Defendant cites no case law for the proposition that a witness's response to an event may render an identification procedure unnecessarily suggestive. An appellant abandons a claim if the appellant cites no authority in support. *See Rios v. State*, 368 S.W.3d 301, 312 (Mo. App. W.D. 2012).

[5] *See, e.g.*, Morgan et al., *Accuracy of Eyewitness Memory for Persons Encountered During Exposure to Highly Intense Stress*, 27 Int'l J.L. & Psychiatry 265, 274 (2004); Brewer et al., *The Confidence-Accuracy Relationship in Eyewitness Identification*, 8 J. Experimental Psychol. Applied 44, 44-5 (2002).

10

cases permitting eyewitness identification testimony under circumstances similar to this case were wrongly decided. Likewise, Defendant's reliance on *Body* is misplaced, because there, like here, the police employed neutral practices to create the photo lineup and to present the lineup to the victim. *Id*. at 631. *Body* does not require a different result.

Because the record does not establish that the identification procedures were unduly suggestive, we do not address the reliability of the identification. The trial court did not abuse its discretion by admitting the pre-trial identifications, given that the pre-trial procedures were not unduly suggestive. Further, Defendant's point relied on indicates that the allegedly suggestive pre-trial identifications rendered the subsequent in-court identifications unreliable. However, because we have concluded that the police procedures were not unduly suggestive, it cannot be concluded that the subsequent in-court identifications were also "tainted."[6] Point I denied.

### Point II: Arguing Facts Not In Evidence

In his second point relied on, Defendant claims that the trial court abused its discretion by failing to provide a limiting instruction after the State made improper remarks during closing argument. Specifically, Defendant asserts that the State argued facts not in evidence pertaining to places that the gun could have been secreted or disposed. The State counters that no abuse of discretion occurred because the State's

---

[6] Notably, Defendant's point relied on simply alleges that the impermissible pre-trial procedures used rendered the in-court identification unreliable, while the argument portion of Defendant's brief posits that Shannon's in-court identification of Defendant did not have a "sufficient independent basis of reliability" because Shannon was "under great stress" and Defendant was the only African American male seated at counsel table. Because this argument is not encompassed by the point relied on, we do not consider it. *See* Rule 84.04(e); *State v. Cochran*, 365 S.W.3d 628, 636 n. 6 (Mo. App. W.D. 2012).

11

argument regarding the location of the gun was a reasonable inference based on the facts adduced at trial.

Generally, "a prosecutor is entitled to substantial latitude in closing argument," *State v. Lloyd*, 205 S.W.3d 893, 909 (Mo. App. S.D. 2006), and "may comment on the evidence and the credibility of the defendant's case," *State v. Storey*, 40 S.W.3d 898, 910 (Mo. banc 2001) (citation and quotations omitted). In doing so, "counsel may even belittle and point to the improbability and untruthfulness of specific evidence," *id.*, and may suggest reasonable inferences for the jury to draw from the evidence, *Lloyd*, 205 S.W.3d at 909. A prosecutor cannot, however, argue facts not in evidence or inferences not supported by the evidence. *See Forrest*, 183 S.W.3d at 226.

During the State's case-in-chief, the prosecutor asked McPherson, "In your experience, is it necessarily unusual to not have a weapon recovered?" Defendant objected on relevancy grounds, but the trial court overruled the objection, indicating that McPherson's experience is "relevant . . . [but] that's it. I'm not going to allow you to delve into it, ask how many times, or anything like that." The prosecutor then restated the question as: "[I]n your experience, it's not necessarily unusual for the weapon to never be recovered, right?" McPherson responded, "Correct." Later, during closing argument, the prosecutor made the following argument in support of the armed criminal action charge:

> [THE PROSECUTOR]: When you find him guilty of the robbery, first degree, next you find him guilty of the armed criminal action. Why? They piggyback on each other. The armed criminal action is for doing this robbery with a real weapon, with a deadly weapon.

12

*    *    *

What other evidence do we have that this gun is real, that it's a deadly weapon?  Here we go.  You saw [Shannon's] expression yesterday.  She was shaking so hard when she saw that surveillance video.  She started crying and bawling. She got very, very, very, very scared and upset.  You could see her reliving it.  She thought she was going to die in that convenience store.  [Dinkins] told you it was real.  She said that was pointed at me, and I took a moment and I looked him right in the face because I knew I needed to remember him.  That is a real gun.

*    *    *

He had his finger on the trigger. He threatened multiple people, pointed it right at this woman.  This is a real gun, and the evidence shows that it's a real gun.  It's that circumstantial evidence.  It's like that rain that we talked about outside.  You saw the puddles.  You saw the umbrella.  You've got all the circumstantial evidence.  Put those puzzle pieces together.  You know that this is a real gun.  I don't have it in the courtroom, *but think of all the places it could be.  In a house somewhere, hidden in the bottom of river*.  It's not the first time as Detective McPherson told you –

[DEFENSE COUNSEL]:  I'm going to object.  Arguing facts not in evidence.

THE COURT: Overruled

[THE PROSECUTOR]:  It's not the first time Detective McPherson told you that a gun wasn't recovered.  Doesn't mean it wasn't real, and it doesn't mean it didn't happen. You saw how he was using that gun in the video.  You can see in this still the fear on this woman's face.  They know it was real, and it was.  [Emphasis added.]

Clearly, the prosecutor's main argument was that the firearm need not be in evidence to establish Defendant's guilt and that circumstantial evidence could establish that the gun Defendant wielded was real.  The prosecutor's point that the gun could be "somewhere" is an inference from McPherson's testimony that it is not unusual to not recover a firearm after a crime and was likely intended to rebut a contrary inference that

Defendant's guilt had not been established because the gun had not been located. McPherson's testimony in this regard was properly admitted and the prosecutor simply made a reasonable inference from McPherson's testimony that Defendant may have disposed of the firearm or otherwise hid it from police discovery. Moreover, we fail to see how the result of the trial would have been different had the prosecutor not made these remarks, given that the only disputed issue at trial was the identity of the robber and the other evidence against Defendant was overwhelming, including eyewitness identifications and a surveillance video.

Our conclusion that the prosecutor's statements were proper inferences drawn from the record that did not prejudice Defendant is supported by *State v. Byrd*, 423 S.W.3d 882 (Mo. App. E.D. 2014), which is directly on point. There, as here, the prosecutor, with respect to the armed criminal action charge, commented during closing argument on the fact that "there are lots of reasons why that gun cannot be brought into this courtroom." *Id*. at 866. This Court reasoned that the prosecutor's comments as to the location of the gun had no bearing on the sole issue at trial, the defendant's identity as the robber, and concluded, in light of the evidence of the defendant's guilt, which included GPS monitoring that placed the defendant at the scene and fingerprint evidence, that the outcome of the trial would not have been different had the prosecutor not argued that the gun need not be in evidence to establish the defendant's guilt. *See id*. at 887. Similarly here, in light of the other evidence of Defendant's guilt, Defendant has failed to establish that the jury's verdict would have been different had the prosecutor not made this argument.

Defendant asserts that *Byrd* is distinguishable because, in that case, the prosecutor did not suggest a variety of ways in which the defendant could have disposed of the weapon, the defendant did not allege a violation of his Sixth Amendment right to confrontation, and the evidence against the defendant was more compelling. These alleged distinctions do not require a different result. First, the prosecutor's argument in *Byrd* did, in fact, suggest that the defendant could have disposed of the weapon in a variety of manners, including disposing of the gun in a river or giving it to a friend. 423 S.W.3d at 886. Moreover, that the defendant in *Byrd* did not argue that the prosecutor effectively became a witness against the accused in violation of his confrontation rights is immaterial. Here, the prosecutor did not testify against Defendant by offering additional evidence. As our review of the record has made clear, the prosecutor's argument was based on facts adduced at trial and, consequently, the prosecutor's statements did not implicate Defendant's Sixth Amendment rights. Finally, the evidence in this case is no less compelling than in *Byrd*, given that a surveillance video actually depicted Defendant committing the crime.[7] The trial court did not abuse its discretion by allowing the prosecutor to argue that there were a number of ways in which Defendant could have disposed of the weapon. Point II denied.

---

[7] Defendant also posits that the prosecutor's remarks were improper because the prosecutor accused Defendant of additional acts of bad character and uncharged felonies, further improperly bolstering the State's theory that Defendant was a "liar." Defendant never objected to the prosecutor's comments on this basis. Nor is this allegation encompassed by Defendant's point relied on, which simply asserts that the comments were improper because the prosecutor argued facts not in evidence. "[I]ssues raised only in the argument portion of the brief are not presented for review." *State v. Tinsley*, 143 S.W.3d 722, 735 n. 7 (Mo. App. S.D. 2004) (citations and quotations omitted). Therefore, we do not consider this assertion.

*Point III: Arguing an Adverse Inference*

In his third point relied on, Defendant claims that the trial court abused its discretion by failing to provide a limiting instruction after the State argued in closing argument that Defendant could have called additional witnesses to support his alibi. According to Defendant, this argument improperly shifted the burden of proof to Defendant and violated the rule against arguing an "adverse inference" when a witness is "equally available."[8] The State responds that the additional alibi witnesses were not equally available to the State and, therefore, the prosecutor properly argued an adverse inference.

At the outset, we note that the argument portion of Defendant's brief focuses entirely on the claim that the prosecutor improperly argued an adverse inference because the missing witnesses were allegedly equally available to the State. Defendant, however, did not object to the prosecutor's argument on this basis. Rather, Defendant simply objected on the basis that the prosecutor's argument was improper because it "shift[ed] the burden." During the State's closing argument, the following ensued:

> [THE PROSECUTOR]: Yes, this case all comes down to identity, who did it. We've known that from the beginning, and that's what I've been showing you during the course of this trial. He did it. These witnesses were not mistaken. Think about it. Whose testimony is corroborated? Whose testimony does the evidence back up? State's witnesses, [Shannon], [Dinkins]. Whose testimony is not corroborated? His sister's. His sister got up here –

---

[8] Defendant does not develop his claim in the argument portion of his brief that the State's closing argument improperly shifted the burden of proof, other than to assert, without citation to authority, that permitting an adverse inference argument when a witness is equally available "can shift the burden of production to the defense." An appellant abandons a claim if the argument portion of the brief does not support the allegation in the point relied on and also, when the appellant cites no authority in support. *See Rios*, 368 S.W.3d at 312; *State v. Greenlee*, 327 S.W.3d 602, 614 (Mo. App. E.D. 2010). Therefore, we do not consider Defendant's claim that the prosecutor's remarks improperly shifted the burden of proof.

[DEFENSE COUNSEL]: Your Honor, I'm going to object. Shifting the burden.

THE COURT: Rephrase your statement.

[THE PROSECUTOR]: His sister got up here and said all these things that she could back none of them up. Including she said there were two other people who were at that apartment.

[DEFENSE COUNSEL]: Objection. Shifting the burden. Improper argument.

THE COURT: Sustained.

[THE PROSECUTOR]: Your Honor, can we approach? I believe this is an adverse inference, Your Honor.

THE COURT: I'll reverse my position on that. Objection's overruled. You can go ahead.

[THE PROSECUTOR]: Thank you. Thank you, Your Honor. Two other people she said could come in here and say where he was. They didn't come in here. Mr. Stennies and Mr. Conrad was his first name. She said she knew how to get ahold of them. Where were they? They were not here. You know why? Because it didn't happen because she was lying.

[DEFENSE COUNSEL]: I'm going to object still. Shifting the burden, Your Honor.

THE COURT: Overruled.

"To preserve a claim of error, counsel must object with sufficient specificity to apprise the trial court of the grounds for the objection." *State v. Stepter*, 794 S.W.2d 649, 655 (Mo. banc 1990). Because Defendant did not object on grounds that the prosecutor improperly drew an "adverse inference" from the missing witnesses, our review of Defendant's claim is for plain error only. Rule 30.20. It is rare that statements made during closing argument amount to plain error. *State v. Jones*, 128 S.W.3d 110, 113 (Mo.

17

App. E.D. 2003). "To reverse a conviction under plain error review on a claim of improper closing argument, a defendant must establish not only that argument was improper, but also that it had a decisive effect on the outcome of the trial and would amount to manifest injustice or miscarriage of justice if the error was left uncorrected." *Hopson*, 168 S.W.3d at 565.

"Generally, in closing argument, the State may not argue an adverse inference from the defendant's failure to call a witness who is *equally available* to both parties, or unavailable to both parties." *State v. Tinsley*, 143 S.W.3d 722, 735 (Mo. App. S.D. 2004) (emphasis added). "'Equally available' means more than merely being susceptible to service of process and is determined by consideration of the following three factors: (1) one party's superior ability to know or identify the witness; (2) the nature of the testimony expected to be given by the witness; and (3) a relationship between a party and the witness which indicates a likelihood that the witness would testify more favorably for one party than the other." *State v. Anderson*, 867 S.W.2d 571, 576 (Mo. App. W.D. 1993). Only when the missing witness is "peculiarly available" to the defendant, should a trial court permit argument that the missing witness would have testified adversely to the defendant. *See id*.

In this case, Defendant had the superior ability to know and identify the missing witnesses, as "Stennies" was Defendant's sister's brother and "Conrad" was likely an acquaintance of Defendant. The record does not indicate that either individual was disclosed to the State as alibi witnesses or that police discovered these individuals through their investigation. Further, the alibi testimony of Defendant's sister indicates

18

that the testimony of Stennies and Conrad would have further corroborated her alibi testimony, which would have been favorable to Defendant and unfavorable to the State. These factors indicate that these witnesses were *not* equally available to both the State and Defendant. Accordingly, we discern no error, plain or otherwise, in the trial court's decision to permit the State to argue an adverse inference from the missing witnesses and not to provide a limiting instruction. Point III denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Philip M. Hess, Judge


Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.