EDWARD R. ARDINI, JR., JUDGE
Deandrey Gordon ("Gordon") appeals his convictions following a jury trial in the Circuit Court of Jackson County for first-degree assault, attempted first-degree robbery, and two counts of armed criminal action. Gordon alleges that the trial court erred in allowing the admission of (1) the pretrial and in-court identifications of Gordon by one of his victims and (2) the alleged hearsay testimony of a law enforcement officer. The convictions and judgment of the trial court are affirmed.
FACTUAL AND PROCEDURAL BACKGROUND[1]
At approximately 6:00 p.m. on November 2, 2012, Mike Tournoy ("Tournoy") drove his father-in-law, James Arnold ("Arnold"), to the Smoke Shop (also known as the Stop N' Shop or Smoke Shack) to buy cigarettes. After making the purchase, they exited the shop and walked toward their car. As Arnold was crossing to the passenger side of the vehicle, a man came from behind the store, grabbed Arnold's arm, pointed a gun in his face, and said, "Give me your money. I'm not kidding." Arnold turned to flee but tripped and fell to the ground.
Tournoy attempted to help Arnold but the man pointed the gun toward Tournoy's chest. Tournoy looked into the man's eyes, thought that the man was going to shoot him, and attempted to run away. Two gunshots sounded, and Tournoy was struck in the leg. Looking underneath the car, Arnold *681 observed the man running north in front of the shop. Tournoy called the police, who arrived within a few minutes.
Arnold described the perpetrator as African-American with sharp, angular features; at least six feet tall; medium build; and wearing a dark-colored baseball cap, hooded jacket, snug-fitting blue jeans, and tennis shoes with white socks. He was not able to see the individual's hair. The gun was described as a gun-metal gray semi-automatic. Tournoy described the man as African-American with a dark complexion and glazy eyes; wearing a red baseball cap; and having "kind of an afro to him[,]" with the hair sticking out of the cap.[2]
Gordon was later identified as a suspect through DNA extracted from a cap that was recovered near the scene. Almost a year after the crime, both victims viewed photo arrays for the purpose of identifying the perpetrator. Arnold, who was shown two different lineups at two different times, did not make an identification. Tournoy viewed a photo lineup on October 8, 2014, and did not identify anyone as the shooter but commented that the suspect had a fuller afro like the third person.[3] Tournoy viewed a different photo array on October 16, 2014, signing and dating his identification of the shooter as the second person in the lineup, who was Gordon. Although Gordon was included in both lineups, the later lineup used a more current photo.
Gordon was charged with first-degree assault, attempted first-degree robbery, and two counts of armed criminal action. Before trial, he moved to suppress the out-of-court identification by Tournoy, claiming that the police procedures relating to the two photo lineups were unduly suggestive rendering any identifications unreliable. The trial court denied his motion.
The matter proceeded to trial. The State's case-in-chief included the testimony of Arnold and Tournoy as well as eyewitnesses and officers who responded to the scene. The evidence included, over the defense's objection, Tournoy's out-of-court identification of Gordon and testimony from an officer that he secured a cap located near the crime scene based on information that the suspect had been seen wearing a cap. Tournoy also identified Gordon at trial. The jury found Gordon guilty of each charged offense and the trial court sentenced him to concurrent terms of twelve years' imprisonment for attempted robbery in the first degree, fifteen years' imprisonment for first-degree assault, and three years' imprisonment for each count of armed criminal action. Gordon appeals.
Additional facts are set forth throughout the opinion.
STANDARD OF REVIEW
Both points raised by Gordon in this appeal involve the trial court's decision to admit certain testimony or evidence. "[A] trial court's decision to admit or exclude evidence" is reviewed for "an abuse of discretion." State v. Washington , 444 S.W.3d 532, 536 (Mo. App. E.D. 2014) (citation omitted). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable *682 as to shock the sense of justice and indicate a lack of careful consideration." Id. (citation omitted). Even if the trial court's ruling admitting or excluding the evidence is error, reversal is not justified "unless the error was so prejudicial that it deprived the defendant of a fair trial such that the verdict would have been different." Id. (citation omitted).
POINT I-ADMISSIBILITY OF IDENTIFICATION
In his first point on appeal, Gordon alleges the trial court erred in overruling his motion to suppress and in admitting, over objection, Tournoy's identification of Gordon. Gordon specifically argues that the photo arrays were impermissibly suggestive, rendering Tournoy's subsequent identifications unreliable.
A two-prong inquiry is used to determine "whether identification testimony is admissible." Id. (citation omitted). "First, the Court determines whether the police procedures used were impermissibly suggestive." Id. (citation omitted). Police procedures are impermissibly "suggestive if the witness's identification of the defendant results from the procedure or actions of the police[ ] rather than from the witness's recollections of his or her firsthand observations." Id. (citation omitted). In determining whether the identification procedures were impermissibly suggestive, "we weigh the totality of the circumstances[.]" State v. Grady , 649 S.W.2d 240, 244 (Mo. App. E.D. 1983) (internal quotation marks and citations omitted). We reach the second prong of the inquiry, which is "whether the suggestive procedure made the identification testimony unreliable[,]" only if the procedure was unnecessarily suggestive. Washington , 444 S.W.3d at 536 (citation omitted).
"In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." State v. Green , 469 S.W.3d 881, 883 (Mo. App. E.D. 2015) (citation omitted). "[T]he facts and inferences therefrom" are viewed "in the light most favorable to the trial court's ruling," and we "disregard all contrary inferences." Id. (citation omitted).
At the suppression hearing and trial, Detective Schmidli testified that he included persons with identifiers and features similar to Gordon in each photo lineup. The first photo array included in the fifth position a picture of Gordon. The second lineup included a more current picture of Gordon. Because this photo showed Gordon from the waist up rather than just his face, the detective selected individuals similarly photographed from the waist up for use in the second photo array and, in an effort to be fair to Gordon, his photo was moved from the fifth to the second position. Detective Schmidli instructed Tournoy prior to reviewing both lineups not to make an identification unless he recognized the suspect and made no suggestive comments to Tournoy in the period between the two lineups.
Gordon argues the police procedures used in this case were impermissibly suggestive because Gordon was the only individual who appeared in both photo lineups shown to the victims; the person who Tournoy allegedly selected as the shooter in the first lineup was not included in the second lineup; and Gordon was the only person in the second lineup who appeared to be slender and holding his pants up, both of which were descriptions given of the perpetrator.
Each of Gordon's arguments fail. Police procedures are "not impermissibly suggestive just because the defendant was the only individual to appear in both" lineups, Washington , 444 S.W.3d at 539 (citation omitted), and we find no support *683 for Gordon's argument that the procedure was suggestive because the second photo array did not include the individual from the first photo array that was allegedly misidentified by Tournoy. Instead, an alleged prior misidentification "is relevant to the reliability of the identification resulting from [the second photo] lineup." State v. Glover , 951 S.W.2d 359, 363 (Mo. App. W.D. 1997).
Additionally, although Gordon was described as slender and there were slight variations in the stature of the individuals included in the second photo array, the physical features were sufficiently similar to not suggest Gordon as the suspect. Cf. Green , 469 S.W.3d at 884-86 (holding that pretrial identification was not unduly suggestive because, inter alia , lineup participants had similar skin tone, age, facial features, hair, facial hair, and were reasonably close in height and weight to defendant and defendant's stature and hairstyle were not so distinctive as to suggest him as the culprit). "Police are only required to use reasonable efforts to find physically similar participants, and 'differences in age, weight, hairstyle, and other physical characteristics do not compel a finding of impermissible suggestiveness.' " Washington , 444 S.W.3d at 539 (citation omitted). The fact that Gordon was the only individual holding his pants up also did not render the photo array unduly suggestive. Tournoy testified that his identification was based on the individual's facial features and complexion with no mention of the fact that the individual appeared to be holding up his pants. Cf. State v. Harris , 483 S.W.3d 488, 493 (Mo. App. E.D. 2016) (holding that photo lineup was not unduly suggestive even though the defendant was the only person wearing dark clothing like the suspect because none of the victims based their identification on the clothing defendant was wearing).[4] Moreover, the description of the suspect holding up his pants originated from an unrelated eyewitness and was not an observation provided by Tournoy or Arnold.
In sum, Gordon has failed to establish that the pre-trial identification by Tournoy was the product of unduly suggestive police procedures. Accordingly, it is unnecessary to address his claim that the pre-trial and in-court identifications were not reliable. Washington , 444 S.W.3d at 536 ("Only if the procedure was unnecessarily suggestive does the Court reach the second prong of the inquiry whether the suggestive procedure made the identification unreliable." (citation omitted) ).[5] The trial *684 court did not err in denying Gordon's motion to suppress and allowing the admission of Tournoy's identification of Gordon as the perpetrator of the crime at trial, and the point is denied.
POINT II-ADMISSIBILITY OF ALLEGED HEARSAY TESTIMONY
Gordon alleges in his second point on appeal that the trial court erred in overruling his objection to an officer's testimony that he secured a cap found near the crime scene based on witness statements that the suspect had been wearing a cap. Gordon specifically argues that the officer's testimony was hearsay and that he was prejudiced by its admission.
"[A]n out-of-court statement offered to prove the truth of the matter asserted in that statement" is hearsay and generally inadmissible. State v. Taylor , 373 S.W.3d 513, 520 (Mo. App. E.D. 2012) (citations omitted). However, if a statement is not offered for its truth but instead to explain subsequent actions, it is not hearsay and is admissible. Id. (citing State v. Barnett , 980 S.W.2d 297, 306 (Mo. banc 1998) ).
At trial, the officer testified that his attention was drawn to a cap located near the scene based on witness accounts that the suspect had been seen wearing a similar cap. Defense counsel objected, arguing that reference to the witness statements was hearsay and violated Gordon's right to confront the witnesses against him. The State responded that the reference to the statements was not offered for its truth but instead to explain the officer's conduct. The court overruled the objection. The officer then testified that he stood by the cap until it was collected by a crime scene investigator.
It is clear from the context of the examination that the testimony at issue was elicited to explain why the officer believed the cap was relevant to the investigation and his subsequent effort to secure the cap until it could be recovered as evidence. Testimony containing out-of-court statements that is presented to explain subsequent conduct is not offered for the truth of the matter asserted and is not hearsay.[6] Compare id. at 521 (citation *685 omitted) (holding that detective's testimony explaining why the police focused their investigation on a particular address and on particular suspects was offered to explain subsequent police conduct and not to prove the truth of the matter asserted) and State v. Allison , 326 S.W.3d 81, 90 (Mo. App. W.D. 2010) (holding that detective's testimony that defendant contacted confidential informant and offered to sell him "medicine" was not offered for the truth of matter asserted but was an explanation for detective's direction to the confidential informant to arrange a meeting) with State v. Boykins , 477 S.W.3d 109, 112-13 (Mo. App. E.D. 2015) (holding that detective's testimony regarding anonymous tips was hearsay and not offered to explain subsequent conduct where the detective did not testify as to what he or other officers actually did as a result of learning the identifying information about the shooter from the anonymous callers and the shooter was not taken into custody until after two witnesses later came forward). Accordingly, the trial court did not abuse its discretion in allowing the officer's testimony referencing the witnesses' statements.
Gordon's second point is denied.
CONCLUSION
The judgment of the trial court is affirmed.
All concur.

The sufficiency of the evidence is not challenged, and the evidence and reasonable inferences therefrom are recited in the light most favorable to the jury's verdict. State v. Hilliard , 535 S.W.3d 341, 343 (Mo. App. E.D. 2016).

A witness visiting her father nearby described a man running from the scene as wearing all black, holding a gun, pulling up his pants, and having a "dread afro, little cornrows" hairstyle.

Tournoy testified that he selected the third person in the first photo array, an individual who was not Gordon, as the person who shot him. However, the lack of markings on that lineup such as Tournoy's signature, initials, or the date was consistent with the detective's testimony that Tournoy did not make an identification at that time.

See also Grady , 649 S.W.2d at 245 ("[T]he fact that defendant appeared in the lineup wearing the same clothes as those described by [the witness] after he was attacked does not render the lineup unduly suggestive. [The i]dentification did not turn on the articles of clothing worn by defendant. The description given to police by [the witness] highlighted his assailant's physical features and, indeed, formed the foundation for the victim's identification of defendant." (citations omitted) ); State v. Arnold , 528 S.W.2d 164, 166 (Mo. App. 1975) (concluding that lineup was not unduly suggestive even though defendant was in the same or similar apparel worn by the criminal offender where the apparel was not decisive in the identification).

We note that even though Tournoy's identification from the second photo array occurred eleven months after the commission of the crime, we would nevertheless find his identifications reliable given his opportunity to clearly view Gordon during the commission of the crime with a great degree of attention. Cf. State v. Story , 646 S.W.2d 68, 71 (Mo. banc 1983) (holding that identification was reliable even though it was made seventeen months after the crime). Tournoy testified that the perpetrator pointed the gun at his chest from a distance of only seven to ten feet, and he believed from looking at the perpetrator's eyes that the man was going to shoot him. Tournoy's detailed description of the perpetrator as African-American with a dark complexion, around the age of thirty, tall with a medium build, having an afro, and wearing a red baseball hat reflect "both a capacity to recall the incident and the accuracy of his memory." Cf. Grady , 649 S.W.2d at 244 ("[T]he witness'[s] description given to police of his attacker in terms of race, type of clothing, and general build, showed both a capacity to recall the incident and the accuracy of his memory." (citation omitted) ). And, Tournoy testified that he would never forget the man who attempted to rob his father-in-law. Cf. id. (noting that even though witness only "saw his attacker's face for 'a few seconds[,]' ... the[ ] conditions were sufficient for the witness 'to fix in his mind's eye the appearance of the culprit,' so that [the witness] would not have been misled even by a suggestive lineup" (citation omitted) ).

Because the statement was not hearsay, Gordon's "right to confront the witnesses against him is not implicated" and we need not address whether Gordon was prejudiced by the admission of the statement. See Taylor , 373 S.W.3d at 520-21 (citing Allison , 326 S.W.3d at 90 ) (regarding right to confront witnesses); Washington , 444 S.W.3d at 536 (requiring erroneous admission of evidence to result in prejudice). We note, however, that we would conclude that Gordon was not prejudiced by the testimony of the officer at issue because it was cumulative of Arnold and Tournoy's testimony that the suspect was wearing a cap and there is no indication that the jury relied on the testimony as proof of Gordon's guilt. Cf. State v. Cole , 483 S.W.3d 470, 475 (Mo. App. E.D. 2016) (holding that admission of hearsay evidence was not prejudicial where the State had ample evidence for each of the elements it was required to prove and the testimony was merely cumulative); State v. Robinson , 111 S.W.3d 510, 514 (Mo. App. S.D. 2003) (holding that admission of hearsay evidence was prejudicial where, during deliberation, the jury asked the court to recount what the informant said because it demonstrated the jury may have been influenced by the hearsay statement). Thus, Gordon cannot establish a reasonable probability that the jury would have reached a different conclusion if the statement had been excluded. See Boykins , 477 S.W.3d at 113 (holding that admission of hearsay evidence regarding anonymous tips was not prejudicial because the statements were not provided as the only evidence identifying the shooter and there was no indication that the jury relied on the anonymous tips as proof of guilt).