

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,
   Plaintiff-Respondent,

vs.

ROY BLACKSURE,
   Defendant-Appellant.

No. SD38010

**Filed:  June 7, 2024**

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

The Honorable Jerry A. Harmison, Judge

**<u>AFFIRMED</u>**

Roy Blacksure ("Blacksure") appeals the judgment of the Circuit Court of Greene

County, Missouri, convicting him of robbery in the first degree under section 570.023, armed

criminal action under section 571.015, burglary in the first degree under section 569.160,

unlawful possession of a firearm under section 571.070, and assault in the fourth degree under

section 565.056.[1]  In his only point on appeal, Blacksure claims the trial court erred in overruling

his motion for judgment of acquittal, and entering judgment and sentencing Blacksure on all his

---

[1] References to sections 570.023, 569.160, and 565.056 are to RSMo 2016, including, as applicable,
statutory changes effective January 1, 2017.  References to sections 571.015 and 571.070 are to RSMo
Cum. Supp. 2020, including, as applicable, statutory changes effective August 28, 2020.

convictions, because there was insufficient evidence to prove beyond a reasonable doubt that Blacksure was one of the men involved in the home invasion from which all charges arose. Finding no merit to Blacksure's argument, the trial court's judgment is affirmed.

## Factual Background and Procedural History

C.E. ("Victim") lived with her fiancé, N.W. ("Fiancé"), in a second-floor apartment in Springfield. On the night of the incident, the couple was expecting two friends to come over. Around 6:30 p.m., Fiancé went to the nearest Walmart two blocks away for hot chocolate and whipped cream, leaving Victim alone in the apartment. While at Walmart, Fiancé called Victim to ask what he was supposed to purchase. During the phone call, Victim heard a knock on the front door of the apartment. Believing it to be her two friends, Victim opened the door without checking the peephole. Three masked black men with guns, none of whom Victim knew, entered the apartment without Victim's permission. Each man was wearing a different colored hoodie: one black, one red, and one green. Each man was holding a handgun. One of the men used a bandana as a mask, and the other two men were wearing medical masks. Fiancé heard a man's voice and Victim's scream over the telephone. Upon hearing this, Fiancé ran out of Walmart, called 9-1-1, and drove home.

Back at the apartment, the men asked Victim where "[her] weed was and where [her] money was." Victim told them she had a small amount of "weed" on the nightstand but did not have any money. The men ransacked the couple's apartment, entering the bedroom and pulling out the dresser drawers. The man wearing the black hoodie dragged Victim by the hair into the bedroom and asked her to "show them where [her] money was." Victim told them there was a shoebox in the closet, but there was no money in the shoebox. The men continued searching the apartment, including the dresser drawers, where they found and took a $5 roll of dimes. They

2

dragged Victim out of the bedroom and again asked for drugs and money, stating they would not hurt her if she told them where the drugs and money were. A gun was pointed at Victim the majority of the time the men were in the apartment. Victim identified the man in the red hoodie as the one "in charge" of the situation, as "[h]e was the one directing, telling them to drag me to the room and to drag me out, called the other two into the living room and looked for the stuff in the living room."

When Fiancé arrived at the apartment, he opened the front door and saw the three men standing near Victim, who was lying on the floor. One of the men pointed a gun at Fiancé, after which Fiancé immediately shut the door. One of the men beat Victim's head against the pantry door and told her to tell Fiancé to open the door because the man "was going to pop." Fiancé then grabbed the doorknob to prevent the men from opening the door. All three men then exited the apartment through the sliding door onto the balcony, taking the roll of dimes and Victim's cell phone with them.

Once the men jumped off the balcony, Victim ran to the door screaming for Fiancé to open it. Fiancé opened the door and pulled Victim out. A neighbor took Victim into her apartment, where the neighbor was on the phone with a 9-1-1 operator, and Victim reported the incident.

While Victim was on the phone with the 9-1-1 operator, Fiancé ran around the apartment building in an attempt to catch the men. Hearing the commotion, a neighbor in an adjacent building exited his apartment and saw an individual "tangled up in cables on their way down to the ground" below the second story balcony of the couple's apartment building. The neighbor went to investigate and could hear someone moving on the other side of a fence between the two apartment buildings. He walked down the fence, but by the time he got to where he could see

3

the road, the person had begun to make his way down the street. The neighbor told Fiancé the direction he saw the individual going, and Fiancé followed his direction.

Other neighbors were shouting "[t]he guy in red" and pointing to a man wearing red. Fiancé followed the man and shouted at him, but the man in red, later identified as Blacksure, did not respond. Blacksure started walking and sprinting away from Fiancé toward the Burrell Behavioral Health – Transitions building ("Transitions building"). Initially, Blacksure did not respond to Fiancé, but as the pursuit continued and they circled the Transitions building, Blacksure told Fiancé to get away from him. During this chase, Fiancé called the police. Blacksure ran across the street and continued down a sidewalk near a cemetery.

The police responding to Fiancé's call arrived and Fiancé identified Blacksure, stating, "That's the guy right there." The police then stopped Blacksure, who was wearing a red shirt, gray pants, and black shoes. Fiancé and Blacksure were the only two people on the street. Fiancé claimed Blacksure was wearing a red hoodie at the beginning of the chase that was taken off at some point during the chase, but no red hoodie was found. Law enforcement used a police service dog to track over the path Blacksure had taken to look for discarded evidence and found a firearm underneath a bush on the west side of the Transitions building. The handgun "was a pistol with a blue slide and a black lower end, silver barrel end."

Minutes after Victim reported the incident to the 9-1-1 operator using the neighbor's phone, police arrived to the couple's apartment complex. Victim told the responding officer that one of the men was wearing a red hoodie. Victim also informed the responding officer that one of the guns used in the home invasion was a black or silver handgun. The police drove Victim to where they had detained Blacksure, and she identified Blacksure as the robber wearing the red hoodie who had been acting as the leader of the men. Blacksure was arrested.

4

Blacksure was charged by amended information with robbery in the first degree, armed criminal action, burglary in the first degree, unlawful possession of a firearm, and assault in the fourth degree. A jury trial was held on January 30, 2023. Victim testified at trial that she identified Blacksure based on his hair, eyes, and skin color, as well as the fact that Fiancé had followed him. The jury found Blacksure guilty on all counts. The trial court sentenced Blacksure to 10 years' imprisonment for robbery in the first degree (Count I), five years' imprisonment for armed criminal action (Count II), 10 years' imprisonment for burglary in the first degree (Count III), five years' imprisonment for unlawful possession of a firearm (Count IV), and 365 days in the county jail for assault in the fourth degree (Count V), with Counts I and II to run consecutive to each other and concurrent with all other sentences.[2] This timely appeal followed.

## Point on Appeal

### Standard of Review

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." *State v. Gomez*, 672 S.W.3d 113, 119 (Mo. App. S.D. 2023) (quoting *State v. Lammers*, 479 S.W.3d 624, 632 (Mo. banc 2016)).

> "In determining whether there is sufficient evidence "to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidences and inferences." *State v. Gilmore*, 537 S.W.3d 342, 344 (Mo. banc 2018) (alterations omitted), quoting *State v. Ess*, 453 S.W.3d 196, 206 (Mo. banc 2015)."

---

[2] Blacksure was also convicted as a prior offender on the first four counts - robbery in the first degree, armed criminal action, burglary in the first degree, and unlawful possession of a firearm.

***State v. Cross***, 672 S.W.3d 865, 867 (Mo. App. S.D. 2023) (quoting ***State v. Lehman***, 617 S.W.3d 843, 846-47 (Mo. banc 2021)). This Court does not act as a "super juror," but grants great deference to the trier of fact in reviewing the sufficiency of the evidence to support a conviction and withstand a motion for judgment of acquittal. ***State v. Brown***, 661 S.W.3d 27, 35 (Mo. App. S.D. 2023) (quoting ***State v. Naylor***, 510 S.W.3d 855, 859 (Mo. banc 2017)). Therefore, this Court only considers whether there is sufficient evidence from which a fact-finder "reasonably could have found the defendant guilty." ***State v. Salsman***, 686 S.W.3d 376, 390 (Mo. App. S.D. 2024) (quoting ***State v. Welch***, 603 S.W.3d 745, 747 (Mo. App. S.D. 2020)).

<u>Analysis</u>

*Multifarious Point*

Blacksure's point on appeal is multifarious, in violation of Rule 84.04(d).[3] It reads:

> The trial court erred in overruling defense counsel's motion for judgment of acquittal and sentencing [Blacksure] on his convictions of robbery in the first degree, armed criminal action, burglary, unlawful use of a weapon, and assault in the fourth degree, because there was insufficient evidence from which a rational finder of fact could find [Blacksure] guilty beyond a reasonable doubt, in violation of his right to due process of law, guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution, in that the state's evidence failed to prove beyond a reasonable doubt that [Blacksure] was one of the men involved in the home invasion from which all charges arose.

Blacksure, presumably understanding the multifarious nature of his point, acknowledges this fact in his brief stating, "Since this issue turns on the identity of the perpetrator, appellant raises challenges to all five counts in one point, without the intention of violating this Court's rules against multifarious points."

"Multiple claims of error in one point relied on renders the point multifarious and as such is a violation of Rule 84.04, made applicable to briefs in criminal appeals by Rule 30.06(c)."

---

[3] All rule references are to Missouri Court Rules (2024).

*State v. Dodd*, 637 S.W.3d 659, 666 (Mo. App. W.D. 2021) (quoting *State v. Leonard*, 490 S.W.3d 730, 736 (Mo. App. W.D. 2016)). In challenging all five convictions in a single point, Blacksure renders this point multifarious in violation of Rule 84.04(d). "Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal." *Id.*

Due to the violation of Rule 84.04(d), it is within this Court's discretion to dismiss Blacksure's appeal. *Id.* However, this Court "prefer[s] to decide cases on the merits where [an] appellant's argument is readily understandable[.]" *State v. Robinson*, 454 S.W.3d 428, 437 n.6 (Mo. App. W.D. 2015) (internal quotations omitted). Because, as Blacksure points out, his challenge to each of his convictions is premised on the lack of sufficient evidence to identify him as the perpetrator, we choose to exercise our discretion to review Blacksure's point on appeal despite the violation of Rule 84.04(d).

*The evidence was sufficient to support each of Blacksure's convictions.*

Blacksure argues that the trial court erred in overruling his motion for judgment of acquittal and conviction of the charged claims because the evidence was insufficient for a rational fact finder to find beyond a reasonable doubt that he was one of the three men involved in the home invasion from which all his charges arose.

When we consider whether evidence is sufficient to support a jury's verdict, we look to the elements of the crime. *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). Here, Blacksure was charged with robbery in the first degree, armed criminal action, burglary in the first degree, unlawful possession of a firearm, and assault in the fourth degree. In challenging the sufficiency of the evidence, Blacksure does not, however, claim the evidence was insufficient to prove a single element of each of the crimes, instead he attacks Victim's credibility in

7

identifying him as one of the three men involved in the home invasion. As a matter of law, this argument is not a reason to find the evidence to convict him was insufficient.

Blacksure argues that the only evidence against him came from the identification of him by Victim when she identified him as the man who had been wearing the red hoodie, which she testified was based on his hair, eyes, and skin color, and argues inconsistencies between his appearance when arrested and witness testimony regarding the offender's clothing and look. Blacksure raises the concern of the "inherently suspicious nature of eyewitness identification evidence." *See **United States v. Wade***, 388 U.S. 218, 228 (1967) (Justice Brennan comments therein, "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification."). Blacksure bases his argument on the fact that he was wearing a red t-shirt with the Levi's logo on the front of it, gray pants, and wore his hair in dreadlocks when he was arrested and photographed by police, and he had no weapon, no mask, no red hoodie, and did not have anything taken in the robbery. Blacksure argues this is in direct conflict with witness testimony, which provided that the man involved in the home invasion was wearing a hoodie. Blacksure points out that Victim testified that "three black men with afros and hoodies" with guns entered her apartment, one wearing a black hoodie, one wearing a green hoodie, and one wearing a red hoodie. Fiancé testified he saw the men when he opened the door to the apartment, one wearing a black hoodie, one wearing a green hoodie, and one wearing a gray hoodie. A neighbor testified he thought one of the men was wearing a gray hoodie and looked Hispanic, and directed Fiancé down the alley where "the guy went." Fiancé further testified that more neighbors yelled, "[t]he guy in red" was on the other side of the building and that Fiancé saw the man wearing a red shirt, jeans, and tennis shoes, and the man

8

began to walk and sprint away from him.  Fiancé testified the man was wearing a red hoodie at the start of the chase, but he did not see him take it off.

Blacksure's argument ignores our standard of review, which requires that all evidence and inferences be viewed in the light most favorable to the verdicts, and all negative evidence and inferences be ignored.  *State v. Smith*, 679 S.W.3d 599, 601 (Mo. App. S.D. 2023).  We then determine whether any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt, not whether we believe the evidence at trial established guilt beyond a reasonable doubt.  *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011).  Further, "[t]he fact-finder, not the appellate court, decides matters relat[ing] to the reliability, credibility, or weight afforded to the witnesses' testimony."  *State v. Hitchcock*, 585 S.W.3d 378, 385 (Mo. App. S.D. 2019) (internal quotations and citation omitted); *see also State v. Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011).  "[T]his Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case."  *State v. Evans*, 517 S.W.3d 528, 536 (Mo. App. S.D. 2015) (quoting *Nash*, 339 S.W.3d at 509).  "The testimony of a single witness, if believed, is sufficient to establish identification . . . ."  *State v. Thomas*, 541 S.W.2d 775, 776 (Mo. App. St.L.D. 1976).  A criminal conviction may be sustained by the Victim's testimony alone, even if that testimony is uncorroborated.  *State v. Ryan*, 576 S.W.3d 326, 332 (Mo. App. S.D. 2019); *see also State v. Dodd*, 637 S.W.3d 659, 668 (Mo. App. W.D. 2021) ("The testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent." (internal quotations omitted)); *State v. Byrd*, 423 S.W.3d 882, 885 (Mo. App. E.D. 2014) ("The testimony of a single witness is sufficient to establish the identity of a defendant if the jury believes it beyond a reasonable doubt." (internal quotations omitted)).

9

In viewing the evidence in the light most favorable to the State, there is sufficient evidence for a jury to identify Blacksure as the perpetrator: Victim had ample opportunity to view her attackers during the invasion and she identified Blacksure by his hair, eyes, and skin color, and the fact that Fiancé followed him until the police arrived. This identification alone, if believed by the jury, is sufficient evidence for a reasonable juror to conclude Blacksure was one of the home invaders. Moreover, additional evidence was offered that the jury may have found persuasive and credible in their identification efforts, such as the testimony of Fiancé, the couple's neighbor, and the responding officer who described the handgun found along Blacksure's path.

The jury was well within its power to reject the various witness identifications of Blacksure as one of the perpetrators. The jury was made aware of the potential pitfalls of eyewitness identification in defense counsel's closing arguments and how those issues were applicable to this case. Furthermore, the jury was instructed to evaluate eyewitness identification with particular care. Being fully apprised of defense counsel's concerns, the particularity to which they were to consider eyewitness identification, and the facts and evidence of the case, the jury found Blacksure guilty based on the evidence. Here, Blacksure's convictions are sustained by Victim's testimony, along with the testimony from Fiancé and other witnesses. The witness-credibility issues as to Blacksure's identification are not a basis to disturb the jury's verdict or the trial court's judgment on appeal. *See **State v. Taylor***, 382 S.W.3d 251, 256 (Mo. App. W.D. 2012) ("Thus, whether the eyewitnesses had the opportunity and ability to perceive and recall the shooter was rightfully a matter for the jury to weigh."). Point is denied.

## Conclusion

The evidence introduced at trial, viewed in the light most favorable to the verdict, was sufficient to support his convictions of robbery in the first degree, armed criminal action, burglary in the first degree, unlawful possession of a firearm, and assault in the fourth degree. The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS